[No. 10,232.]

## THE PEOPLE v. CHIN MOOK SOW.

JURY ON TRIAL OF AN ALIEN.—Aliens accused of a crime are not entitled to be tried by a jury composed of one half aliens.

DYING DECLARATIONS AS EVIDENCE.—If the dying declarations of a deceased person are offered in evidence, evidence of the prevailing religious belief in the country or district where he was born, and from whence he emigrated, for the purpose of affecting the credibility of his declarations, is not admissible to prove, nor does it tend to prove that he did not entertain a belief in a future state. The inquiry must be confined to the the opinions of the deceased.

IDEM.—The dying declarations of a deceased person cannot be rejected as evidence on account of his religious belief.

IDEM.—Dying declarations of a deceased person cannot be excluded as evidence because the deceased refused to answer further questions, saying ing he was "a dying man."

DECLARATIONS IN ANOTHER'S PRESENCE.—If declarations are offered in evidence as against a person in whose presence they were made, and there is evidence tending to show that such person heard and understood them, it is for the jury to decide whether he understood them.

RIGHT TO CONTRADICT WITNESS.—The rules, that a witness cannot be cross-examined as to a matter which is irrelevant to the issue merely for the purpose of contradicting him by other evidence, and that if a question is put to a witness on cross-examination which is irrelevant, his answer cannot be contradicted by the party who asked the question, do not apply when the question asked calls for a response in respect to a matter which the party asking the question would have the right to prove as an independent fact.

PROOF THAT WITNESS HAS BEEN CONVICTED OF A FELONY.—A witness, on cross-examination, may be asked if he has not been convicted of a felony, and the party asking the question may also introduce the record of his conviction.

TRANSMITTING INDICTMENT FOR MURDER TO DISTRICT COURT.—If there are several District Courts in one county, and an indictment is found in the county for murder, the clerk of the County Court may transmit it to either District Court for trial.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The defendant was charged by the indictment with having murdered Yee Ah Chin by stabbing him with a knife, on the tenth day of December, 1875. The indictment was found in the County Court of the city and county of San Francisco, and was transmitted by the clerk to the District Court, Fifteenth Judicial District, for trial. There were, at the time, in the city and county of San Francisco, five judicial districts, each having jurisdiction over the entire city and county. The trial was set for March 13, 1876, and before the trial, the defendant filed an affidavit, stating that he was a natural born subject of the emperor of China, and had not been naturalized, and demanded that one-half the jury by which he was to be tried should be composed of aliens. The court denied the demand. The prosecution called as a witness Mr. Locke, who could understand the Chinese, and conversed in that language. The witness testified that he entered a room where the wounded man lay, soon after he was stabbed, and the defendant was brought in, and in the defendant's presence the witness asked the deceased who cut him. At this stage of the proceedings the defendant's counsel were permitted to make a long examination of the witness on the subject of his knowledge of the Chinese language, and as to the different dialects of that language, and as to what dialect the witness spoke, what the deceased, and what the defendant spoke, for the purpose of laying the foundation for objections to the declarations of the deceased being received in evidence. The answers of the witness tended to show that the deceased spoke one dialect and the defendant another, and the witness still another, but that each could understand the other, and that the defendant could understand what the deceased said.

The witness then answered the question of the prosecution, and said that deceased told him that Chin Mook Sow did it, and at the same time pointed to the defendant, and that the defendant heard it, but made no reply; that the wounded man was soon removed to the prison hospital, and the defendant was again brought into his presence, and the witness asked the wounded man what he was doing when he

was cut, and·he answered that he had just quit work and taken off his clothes, and was wiping his body with a damp towel.   He then said he did not want to talk any more; that he was about to die.   The witness informed the wounded man that it was the opinion of the physician that he was about to die.   His statement was taken down in writing by an officer and read to him, and by him pronounced correct, and he signed his mark to it, being too weak to write.   The defendant objected to these declarations of the deceased being read in evidence, but the court overruled the objection.   One ground of the objection was that the·deceased did not entertain such a belief in a future state as rendered his dying declarations admissible.   This objection was based on the testimony of the witness Locke, which appears in the note to the opinion, and which had been drawn out on the examination of the witness by the defendant's counsel, before the declarations were received in evidence.

The defendant was convicted and appealed.

The other facts are stated in the opinion.

*Solomon A. Sharp, E. J. Pringle, E. F. B. Hartson and R. Y. Hayne,* for the Appellant.

*D. J. Murphy,* for the Respondent.

By the COURT:

Juries composed in part of denizens and in part of aliens are not known to our system of laws.   The statute determines the qualifications of jurors, and prescribes the mode of drawing and empaneling them: aliens are expressly prohibited from serving in that capacity. (Code Civ. Pro. sec. 198.)

The court below properly held that the evidence failed to show that the deceased did not entertain such belief in a future state as rendered his dying declaration admissible. The inquiry as to religious belief of deceased was not admissible on the point of competency. (*People* v. *Sanford,* 43 Cal. 29.) If designed to affect the credibility of the dying declarations it was properly confined to the opinions,

or belief, or want of belief, on the part of the individual. Evidence as to the prevailing religion in the Empire of China, or in a province or district of the empire where deceased was born, or from whence he emigrated to California, would not authorize any inference as to the views of the deceased himself in respect to the subject of rewards or punishments beyond this life. (See Note at end of opinion.)

Nor was the dying declaration inadmissible because the injured person declined to answer a further question, saying, " Do not talk to me, I am a dying man."

There was evidence tending to show that the defendant heard and understood the statements of deceased. It was for the jury to decide whether, under the circumstances proved, he heard and understood them.

When, under cross-examination as a witness, the defendant, in response to a question of the District Attorney, declared that he had not previously been convicted of a certain felony. Subsequently, against the objection of defendant, the District Attorney was permitted to introduce the record of the conviction. It is a well settled rule that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. And if a question is put to a witness on cross-examination, which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asked him the question; but it is conclusive against him. But when the question asked on cross-examination calls for a response in respect to a matter which the party asking the question would have a right to prove as an independent fact, the rule does not apply. In the latitude permitted by the law in cross-examinations, many questions may be asked which could not be allowed on direct examination, because relating to matter purely collateral. The Code of Civil Procedure (section 2051) allows the cross-examiner to ask a witness if he has been convicted of a felony, and does not confine the evidence of that fact—as was the rule before the Code—to the record of conviction. But by the same section the right to prove the fact, by the

record of conviction, is continued.  The law authorized the District Attorney to prove by the record the conviction as a distinct fact.  It was not one of those matters entirely irrelevant, which may be inquired into only by virtue of the wide latitude permissible on cross-examination, and was, therefore, not simply collateral within the meaning of the rule, which prohibits any other evidence than the statement of the witness on cross-examination.

It may be further said that the inquiry made of the witness did not involve the precise fact established by the record of conviction, inasmuch as the record contained a name different from that in the present indictment, or acknowledged by the defendant to be his true name.  The evidence offered on the part of the prosecution, to identify the defendant as the person previously convicted, was not objected to on the ground that it contradicted the testimony of the defendant.

The Constitution of the State gives to the District Courts such jurisdiction in criminal cases as is not otherwise provided for by law, leaving it to the legislature to regulate its exercise.  Section 1028 of the Penal Code, as amended provides: " When an indictment is found for murder or manslaughter, it must be transmitted by the clerk to a district court of the county for trial."  There are five district courts in San Francisco county, and the statute is satisfied when the indictment is transmitted to either.

Judgment and order denying a new trial affirmed, and the cause remanded, with directions to the court below to fix a day to carry the sentence into execution.

NOTE.—The following is the substance of the evidence given concerning the religious belief of the Chinese people:

Question. Is there any prevailing belief in China in reference to an existence after this life, in which there is a responsibility for the doings of this life?

Answer. Yes, sir.

Q. Does that belief recognize a responsibility hereafter for the doings of this life?

A. Yes, sir.

Q. Is that connected with a religious belief?

A. Yes, sir.

Q. Is it based upon the idea of a God?

A. Yes, sir.

Q. Is it not connected with a system of belief—a material belief connected with the transmigration of the soul to other bodies?

A. Yes, sir.

Q. That is a religion known under the name of Buddhism, is it not?

A. I suppose so.

By the Court.    Q. Did you ever live in China?

A. Yes, sir.

Q. How many years?

A. Four years.

Q. How old were you when you went there?

A. I was born there.

Q. How old were you when you left there?

A. Four years old.

Q. Then what you know about it is what you learn from history?

A. And among Chinese people.

Q. Among Chinese people here?

A. Yes, sir.

Q. Is there any belief prevalent in China of a spiritual existence of the soul which is capable of eternal pangs or eternal misery after this life, or is it only of a physical existence?

A. Well, of a certain existence, but not to eternity.

Q. It is only a physical existence, subsequent to this, is it not?

A. Yes, sir.

### CROSS-EXAMINATION.

Q. What do you mean by a physical existence? That they live in the body after death, or leave this body and live in the spirit, which?

A. Live in the spirit.

Q. If I understand you, they believe in a Superior Being, do they not? A God?

A. Yes, sir.

Q. They believe if they live righteously and do well in this world they will be rewarded hereafter?

A. That they will be rewarded hereafter by being born again.

Q. Born in the spirit, is that what you mean?

A. The spirit will go into a small body in a woman's womb, and that body will be born again in this world.

Q. That is, not in the spirit, but in a material body?

A. In spirit, a material body.

Q. Is not that about the same?

A. Yes, sir.

Q. Do you mean to say that the doctrine of Buddha is the prevailing doctrine in China?

A. I ain't sure of that.

Q. Do you know what the religion of the Chinese people is?

A. Yes, sir.

Q. Is it Buddhism, or is it based upon the doctrine of Confucius, which?

A. One thing they base on the teachings of Confucius as a general thing. The main thing is belief in Confucius's teachings.

Q. Does not Confucius teach belief in a hereafter, and that by leading a virtuous and good life, we will live hereafter in another sphere in an immaterial body, not in a material body?

A. Yes, sir.

Q. That is the idea and extent of the doctrine of Confucius, as you understand it?

A. Yes, sir.

Q. Then I understand you the prevailing religion in China is based upon those ideas of Confucius?

A. Yes, sir.

Q. They believe in a heaven, do they not?

A. Yes, sir.

Q. What is that heaven?

A. What heaven is? When a person is very good, unusually good, he dies and his spirit will go to heaven and become a God, and live there eternally.

Points decided.

If he is moderately good, he will be born again and come back into life. If he is bad, his spirit will transform to some animal; and if he is unusually bad, he will be cast down into hell, nine degrees below the world.

Q. Below the world or below the bottom of hell?

A. The bottom of hell.

Q. Let me see now if I have got your idea. Your idea is that when a party dies who has led a very good life, he ascends to heaven and lives there eternally in spirit?

A. Yes, sir.

Q. A person moderately good has to be born again in flesh. Is that it?

A. Yes, sir.

Q. That is pretty near purgatory.

Court. Limbo.

Q. And a person that is bad is punished by transforming him into some animal that has to inhabit this earth?

A. Yes, sir; such as chicken, duck, hog, or horse?

Q. Those that are very bad are sent to hell?

A. Yes, sir.

### RE-DIRECT EXAMINATION.

Q. Does not the belief in regard to being transformed into a chicken, duck, hog, or horse extend simply to a probational time?

A. For a certain time.

Q. And then?

A. They die and become transformed into some other animal again.

Q. A little higher in respectability?

A. According to the degree of their crime. If they are a little bad they will be transformed once or twice; if they are more bad they have to go through eight or ten transformations, and then be born again still as a human being.

By the Court. Q. Does the fact whether the chicken is a good chicken or not make any difference?

A. When it is transformed into some other animal.

Q. The character of the chicken makes no difference?

A. No, sir.

Q. He never gets to heaven after he once got into an animal form?

A. After having gone through different transformations they will be born as human beings in this world. And if they are unusually good they go to heaven, and if unusually bad, they have to go through the same operation again.

Q. So he has another opportunity to come back to the earth and discharge his duty and get to heaven?

A. Yes, sir.