## PEOPLE v. ELSTER.

### No. 10,933; May 27, 1884.

3 Pac. 884.

**Criminal Law—Evidence.—The Conduct, Acts and Statements** of a person under arrest for a crime which he is charged with having committed are admissible in evidence, and such inference may be drawn from them as are warranted by the evidence; but an inference of guilt cannot be drawn from a statement evincive of innocence, nor from silence, where a person is not bound to speak, nor from refusal to answer unauthorized questions touching the charge against him.[1]

**Larceny—Possession of Stolen Goods.—When a Man in Whose** Possession stolen property is found gives an account of how he came by it, as by telling the name of the person from whom he received it, it is incumbent on the prosecution to show that the account is false, unless the account given be unreasonable or improbable on the face of it.

**Larceny—Possession of Stolen Goods.—While It Would be** Proper, in a case in which there is any evidence tending to prove

[1] Cited and explained in People v. Dole, 122 Cal. 490, 68 Am. St. Rep. 50, 55 Pac. 583, holding that evidence of conduct, etc., is competent, but it is for the jury to draw the inference therefrom.

Cited and approved in People v. Dole, 122 Cal. 498, 68 Am. St. Rep. 50, 55 Pac. 586, in respect of silence being no evidence of guilt.

inculpatory facts and circumstances in connection with the possession of property recently stolen, for a court to instruct the jury that they will be justified in finding the defendant guilty of the theft, it would be improper and erroneous to give such instructions if there were no evidence in the case to warrant the inference of such circumstances.

APPEAL from the Superior Court of Stanislaus County.

Wright & Hazen for appellant; Attorney General for respondent.

McKEE, J.—In this case the defendant was convicted of grand larceny. He moved for a new trial. The motion was denied, and from the judgment of conviction and the order denying a new trial he has appealed.

The larceny is charged to have been committed on Sunday, April 1, 1883. It consisted of the stealing of a calf from the custody of its alleged owner. The principal evidence connecting the defendant with the offense was the discovery of the hide of the calf in the shop of a butcher, to whom the defendant had fetched and sold it early on the morning of April 2, 1883. At the trial the defendant attempted to account for the possession, but it was contended the account was false. The question, therefore, of the guilt or innocence of the defendant depended upon the possession by him of the property soon after it was alleged to have been stolen, and the circumstances in connection with its possession and sale. Assuming that the calf belonged to the person named in the information as the owner, and that it had been stolen from him, yet the mere possession of recently stolen property, standing alone, and unconnected with other facts and circumstances tending to prove guilt, is not of itself sufficient in law to warrant a conviction; it is merely a circumstance tending to implicate the accused; but if linked with other facts and circumstances also tending to implicate him, it may amount to direct and positive proof: People v. Beaver, 49 Cal. 57; People v. Getty, 49 Cal. 581; People v. Chambers, 18 Cal. 388; People v. Ah Ki, 20 Cal. 177; People v. Gassaway, 23 Cal. 51; People v. De Lacey, 28 Cal. 590; People v. Noregea, 48 Cal. 123. To that extent the court properly explained the law to the jury; but in connection with that explanation it instructed them as follows: "If you believe from the evi-

dence, beyond a reasonable doubt, that the defendant refused to give any explanation of the fact of possession, or attempted to dispose of the property, or to destroy its marks, these facts, if you find them to exist, or any other circumstances naturally calculated to awaken suspicion against him, and to corroborate the inference of guilty possession, will, in connection with the fact of recent possession, justify you in finding the defendant guilty.''

This instruction was followed by others to the effect that if the jury believed that the calf was stolen, and was very soon afterward found in the defendant's possession, the fact ''that the defendant failed or refused, when asked, to account for the possession in an honest manner, or to show that such possession was honestly obtained,'' or ''refused or neglected to give any explanation of his possession, was a circumstance which, in connection with the fact of his possession, and in connection with any other facts or circumstances which would be calculated to awaken suspicion against him and to corroborate the inference of guilty possession, would justify them in finding the defendant guilty.''

The only evidence in the record for the assumption of the fact that the defendant, when asked, failed, or refused, or neglected to give any explanation of his possession of the property, is this: After the defendant had been arrested, and was in the custody of the officers who arrested him, on the way to the examining magistrate, he inquired of the officer if he was arrested for an animal which had been sold to Tranor (the butcher at whose shop the hide of the calf had been found), admitting that he had sold some beef there; and then the officer said to him, ''You have got no cattle of your own, have you?'' To which he replied, ''He had not.'' ''I then,'' continued the officer, testifying, ''asked him where he got the cattle or beef which he sold? He said he did not understand the law, and he did not think it was best for him to say anything about it; that the less he talked about it the best, as long as he didn't understand the law. I told him the first thing I would do if I was charged with having in my possession property that there was a question about the title, would be to tell where I got it. He said he did not understand the law, and did not propose to say much about it; didn't understand anything about the law. He said that beef

that was sold to Tranor was straight—nothing wrong about it.''

It is well settled that the conduct, acts and statements of a person under arrest for a crime, which he is charged with having committed, are admissible in evidence against him, and such inferences may be drawn from them as are warranted by the evidence, considered in the light of human experience. But an inference of guilt cannot be drawn from a statement evincive of innocence, nor from silence, where a person is not bound to speak, nor from refusal to answer unauthorized questions touching the charge against him, which, under the circumstances, called for no reply: Code Civ. Proc., secs. 1958, 1960. A person accused of crime is under the protection of the law. He is not bound to assert his innocence to an officer who arrests him, nor to answer questions asked by the officer as to the crime for which he is arrested, or any circumstances connected with it. Under such circumstances the accused has the right to be silent, or to assign the reason why he, at that time, declines to enter into explanations. If he keeps silence or refuses to answer ''because he does not understand the law, and had better not say anything,'' no inference from his silence or refusal can be drawn against him: 1 Greenleaf on Evidence, secs. 197, 199; Commonwealth v. McDermott, 123 Mass. 440, 25 Am. Rep. 120; Gale v. Lincoln, 11 Vt. 152.

Now, neither statement made by the defendant that ''the sale by him of the beef to Tranor was all straight, and there was nothing wrong about it,'' nor his refusal to answer the questions which were asked by the officer, warranted the inference of an implied admission of guilt. As the statement was in itself evincive of innocence and not of guilt, and the refusal was the exercise of a legal right, it was erroneous for the court to assume them as circumstances upon which to predicate instructions that the possession of the defendant was a ''guilty possession.'' If such an inference could be drawn at all from the conduct or statements of the defendant, it was for the jury to draw it; they only could determine whether the conduct of the defendant, on the occasion of his arrest, was contrary to the ordinary behavior of a person charged with crime, or attributable to his mental characteristics, or evinced guilt or innocence: Greenfield v. People, 85 N. Y. 86, 39 Am. Rep. 636. It was not for the court: People v. Ah Sing, 59 Cal. 400.

Of many of the other circumstances upon which the instructions were predicated we find no evidence in the record. The record discloses that the defendant did not fail or refuse to explain or account for his possession of the property. At the trial of the case direct evidence was given tending to prove that the calf belonged to one Fagan, a farmer and cattle owner; that Fagan killed it the Sunday evening when it was charged to have been stolen, on a range where his cattle pastured, in common with cattle belonging to the person named in the information as the owner, and others; that, after killing it, he, with his son, took out the entrails of the calf at the place on the range where it was killed, cut off its head and feet, as was customary in killing an animal for market, and took it, with the assistance of the defendant, who was his hired man, to his farm-house, where he kept it through the night, and sent it next morning, by the defendant, for sale to the butcher; that it was sent by the defendant, for that purpose, early in the morning, because the butcher had requested that any animal sent for sale should be sent early in the morning, before he went to supply his customers. The defendant himself also testified, as a witness in his own behalf, that his connection with the possession of the calf was only that of a hired man, acting under the orders of Fagan, who claimed to be the owner of the calf, and who, he believed, was the owner. Now, this account was either true or false. If true, the possession by the defendant was not a ''guilty possession,'' whether the calf belonged to the person named in the information or to Fagan. No presumption of guilt could arise against the defendant from a mere possession of property received from his master for the purpose of selling it, nor could an inference of guilt be drawn against him, unless the account given of the possession was unreasonable or improbable on its face. If neither unreasonable nor improbable, then the possession was accounted for. It was not a guilty possession unless it was proved, or it might be fairly presumed, that the account or explanation given of it was false. ''It is a general principle,'' says Mr. Justice Alderson, ''that when a man, in whose possession stolen property is found, gives a reasonable account of how he came by it, as by telling the name of the person from whom he received it, it is incumbent on the prosecution to show that the account is false,

unless the account given be unreasonable or improbable on the face of it'': Roscoe on Criminal Evidence, 21.

After the defendant had accounted for the possession, it was for the jury to determine whether the account given was reasonable or improbable, true or false. But, whether the account was one or the other, it did not warrant the assumption upon which to predicate instructions to the jury that the defendant had failed or refused or neglected to account for the possession at all. Neither of these things could be assumed of the conduct or statement or explanation of the defendant, as given in evidence; and it is well settled that facts and circumstances upon which instructions are predicated must be founded upon the evidence in the case. If there be no evidence tending to prove them, it is error for the court to assume them, or to so word instructions with reference to them as to leave it to the jury to infer their existence. While, therefore, it would be proper, in a case in which there is any evidence tending to prove inculpatory facts and circumstances in connection with the possession of property recently stolen, for a court to instruct the jury that they will be justified in finding the defendant guilty of the theft, it would be improper and erroneous to give such instructions if there were no evidence in the case to warrant the inference of such circumstances. Instructions should only be given with reference to a fact or state of facts in evidence; otherwise they are mere legal abstractions, inapplicable to the case, and calculated to mislead the jury (People v. Turley, 50 Cal. 469; People v. Vasquez, 49 Cal. 562; People v. Sanchez, 24 Cal. 17; People v. Best, 39 Cal. 690); and, in giving them, comments on the testimony produced should not be made; nor should they contain expressions upon the weight and sufficiency of the evidence; nor strong expressions as to the guilt of the accused. Such expressions, coming with the weight of authority, are calculated to bias the minds of the jurymen, and may impair the right of the accused, guaranteed by the constitution, to a trial of the issues of fact by an impartial jury: People v. Williams, 17 Cal. 142; People v. Ah Sing, 59 Cal. 400; People v. Mitchell, 55 Cal. 236; People v. Levison, 16 Cal. 99, 76 Am. Dec. 505; People v. Walden, 51 Cal. 588; People v. Wong Ah Ngow, 54 Cal. 152, 35 Am. Rep. 69; People v. Carrillo, 54 Cal.

63; People v. Feilen, 58 Cal. 218, 41 Am. Rep. 258; People v. Graham, 21 Cal. 262; People v. Atherton, 51 Cal. 495.

Fagan, a witness called by the defendant, was examined, and gave material evidence in the case. On his cross-examination the district attorney asked the following questions, viz.: "Have you ever been arrested for a felony? Have you been arrested for stage-robbing? Have you been arrested for cattle-stealing?" The witness was compelled to answer each question, against the exception of the defendant. The only possible object of asking the questions was to impeach the credibility of the witness. But the testimony was not admissible for that purpose. The mere fact that the witness had been arrested does not prove nor tend to prove that he had been convicted of any offense; and until there is proof of conviction, the witness was protected by the legal presumption of innocence. Hence the rule formulated by section 205, Code of Civil Procedure: "A witness may be impeached by the party against whom he was called, by contradictory evidence that his general reputation for truth, honesty, and integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a felony": People v. Chin Mook Sow, 51 Cal. 597; People v. Reinhart, 39 Cal. 449; People v. McDonald, 39 Cal. 697; People v. Snellie, July term, 1871 [not reported].

It follows that the foregoing rulings and instructions of the court were erroneous.

Judgment and order reversed and cause remanded.

We concur in the judgment: McKinstry, J.; Ross, J.