[Filed January 11, 1886.]

## STATE *v.* HENRY BACON.

EVIDENCE—WITNESS—CONVICTION OF CRIME—RECORD OF.—Under the Code, it may be shown by the examination of a witness that he has been convicted either of a felony or a misdemeanor, and the record may also be introduced to prove that fact.

SAME—IMPEACHMENT OF WITNESS.—The state of feeling and relationship of a witness towards a party for or against whom he testifies may be shown, to be weighed with his testimony; and this, notwithstanding the evidence sought may tend to impeach the character of the witness.

SAME—DISCRETION OF COURT—PRIVILEGE OF WITNESS.—Subject to the sound discretion of the court, a witness may be compelled to answer any question which tends to test his credibility, or to shake his credit by injuring his character, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself; except only that he may claim his privilege and refuse to answer a question which tends to expose him to a criminal charge

SAME—CROSS-EXAMINATION.—A sound discretion will never sanction inquiries the sole object of which is to disgrace the witness, and not to test his credibility. And whenever such is the object, it is the duty of the court to interpose and confine the cross-examination to proper limits.

MULTNOMAH COUNTY. Defendant appeals. Affirmed.

*R. Citron*, for Appellant.

It was error to permit the state to ask defendant's witness, McLaughlin, if he and defendant had not been arrested at one time together for robbery? The effect of this testimony was to put the defendant's character in evidence, which could only be done in the first instance by the defendant himself. (*Coleman* v. *People,* 55 N. Y. 88; *State* v. *Garrand,* 5 Or. 156; *People* v. *Fair,* 43 Cal. 137; *People* v. *White,* 14 Wend. 111.) Nor was the question competent to impeach the witness. It did not prove nor tend to prove that he had been convicted of any offense; and until there is proof of conviction, the witness was protected by the legal presumption of innocence. Such evidence is clearly inadmissible. (*People* v. *Elster,* 3 West Coast Rep. 37; *State* v. *Huff,* 11 Nev. 19; *Jackson* v. *Osborn,* 2 Wend. 555; S. C., 20 Am. Dec. 649; *People* v. *Barnes,* 48 Cal. 551; *Commonwealth* v. *Mason,* 105 Mass. 163; *Smith* v. *Castles,* 1 Gray, 108; *People* v. *Bowen,* 49 Cal. 654.)

*J. M. Gearin, District Attorney*, for the Respondent.

LORD, J. The defendant was indicted, tried, and convicted of the crime of larceny. His appeal is based upon three exceptions to evidence alleged to have been illegally admitted, whereby he was prejudiced at his trial. By

the bill of exceptions, it appears that on the cross-examination of a witness for the defendant he was asked by the state "if he had not been convicted of a crime, and confined in the county jail;" which was objected to, on the ground that it was not a proper way to impeach the credibility of the witness. On the subject of the impeachment of a witness, the Code provides "that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a crime." (Code, sec. 830, p. 274.) And the word "crime," as defined by the Code, includes both felonies and misdemeanors. (Crim. Code, secs. 1, 2, p. 340.) It may therefore be shown by the examination of the witness that he has been convicted either of a felony or a misdemeanor, and the record may also be introduced to prove that fact. Section 2051 of the California Code, and section 830, *supra*, are identical in language as to the particular matter here referred to, except in the former the word "felony" is used instead of the word "crime," as in our section. And under section 2051, *supra*, it has been held that a witness may be asked if he has been convicted of a felony, or that fact may be proved by the record of his conviction. (*People* v. *Chin Mook Sow*, 51 Cal. 597.) Prior to the adoption of the Code, to discredit a witness by conviction it was necessary to produce the record to show such conviction. It seems it would have been objectionable to ask him whether he had been so convicted, because it would not have been the best evidence. (1 Greenl. Ev., sec., 457; *People* v. *Reinhart*, 39 Cal. 449; *People* v. *Melvane*, Id. 614; *People* v. *McDonald*, Id. 697.) But the Code has worked a change in the common-law rule, and under the provisions of our section, as it includes both felonies and misdemeanors, the question was admissible, and there was no error in the ruling of the court.

The next objection is to another·question asked the witness on the same cross-examination—"whether he and the defendant had not at·one time been arrested on a charge of robbery." The question was objected to, on the ground that the credibility of the witness could not be impeached by the charge of a crime. The court overruled the objection, and admitted the testimony, but only, as the record states, for the purpose of showing the relations of the witness to the defendant. There is no doubt that the state of feeling and relationship·of a witness towards the party for or against whom he testifies may properly be shown, to be weighed with his testimony. (1 Greenl. Ev., sec. 450; *Thomas* v. *David,* 7 Car. & P. 350; *Atwood* v.*Welton,* 7 Conn. 66.)

Mr. Greenleaf says: "The situation of the witness with respect to the parties and to the subject of the litigation, his intent, his motives, his inclinations, and prejudices, . . . . are all fully investigated and ascertained, and submitted to the consideration of the jury before whom he has testified, and who have thus had an opportunity of observing his demeanor, and of determining the just weight and value of his testimony." (1 Greenl. Ev., sec. 446.)

And in *Ryan* v. *People,* 79 N. Y. 593, it was held, upon the trial of an indictment for an assault and battery, when the offense was alleged to have been committed during an affray at a town meeting, and a witness for the prisoner was asked on his cross-examination whether he had been indicted for assault and battery committed on that day, which was objected to and overruled, that it was a fair inference that the witness was indicted as one of the participants in the affray, and that the question was competent to show the position he occupied in respect to the controversy out of which the affray arose, and his interest in the litigation, and as showing preju-

dice and bias. It was upon the fact that the testimony tended directly to connect the witness as a participant in the subject-matter in controversy that it was held admissible for the purpose of showing his relationship to it and interest in the litigation. But here the avowed purpose of the testimony is to show the relationship of the parties as revealing the interest of the witness in the litigation, his motive, and the state of his feelings; the right to do which, it is claimed, the state cannot be deprived of, because the evidence tends to impeach his good character. And in *Ryan* v. *People, supra,* Folger and Earl, JJ., concurred only in the result, thinking that the question put as asked on cross-examination was properly within the discretion of the court. And looking at the previous decisions in that state, it seems to me this is the result properly deducible from them. And if this be so, the question was admissible in the case under consideration, as against the objection made.

This leads us directly to the consideration of the question whether a witness introduced by the defendant may be asked on cross-examination concerning any offense or serious charge brought against him. In *People* v. *Elster,* 3 Pac. Rep. 884 (Cal.), it was held that the credibility of a witness cannot be impeached by evidence that he has been arrested for a felony. The court say:

" Fagan, a witness called by the defendant, was examined, and gave material evidence in the case. On his cross-examination the district attorney asked him the following questions: 'Have you ever been arrested for a felony?' 'Have you been arrested for stage robbery?' ' Have you been arrested for cattle-stealing?' The witness was compelled to answer each question, against the objection of the defendant. The only possible object of asking the questions was to impeach the credibility of the witness. But the testimony was not admissible for

that purpose. The mere fact that the witness had been arrested does not prove, or tend to prove, that he had been convicted of any offense; and until there is proof of conviction, the witness was protected by the legal presumption of innocence. Hence the rule formulated by the Code of Civil Procedure: 'A witness may be impeached by the party against whom he was called, by contradictory evidence that his general reputation for truth, honesty, and integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness or the record of the judgment that he has been convicted of a felony.'"

The effect of this decision is, that the credibility of a witness cannot be impeached on a cross-examination, by asking him whether he was ever arrested for a felony, or charged with some serious offense; but in such case, the inquiry must be confined to the fact of a conviction, and the provision cited is sufficiently similar to our own to make the decision in point here. It is no doubt true, as said by Campbell, J., that "there is no rule which will allow the credit of a witness to be impeached or assailed by the direct testimony of other witnesses to any criminality, or charge of criminality, unless he has actually been adjudged guilty. And this can only be shown by a record of a judgment." (*Driscoll* v. *People,* 47 Mich. 416, 417.) But the inquiry here is, whether, within the proper discretion of the court, a witness on cross-examination may be asked concerning some charge of criminality.

In *Real* v. *People,* 42 N. Y. 270, a witness introduced by the accused, and who gave material testimony in his favor, was asked, upon cross-examination, whether he had been in the penitentiary, and how long, which question was excepted to and overruled. The court say:

"My conclusion is, that a witness upon cross-examina-

tion may be asked whether he has been in jail, the peni-
tentiary, or state prison, or other place that would tend
to impair his credibility, and how much of his life he
has passed in such places.   When the inquiry is confined
as to whether he has been convicted, and of what, a
different rule may perhaps apply.   This involves ques-
tions as to the jurisdiction and proceedings of the court,
of which the witness may not be competent to speak.
Here the inquiry was simply whether and how long the
witness had been in the penitentiary.   This the witness
knew, and could not be mistaken about. . . . . The
extent of the cross-examination of this character is some-
what in the discretion of the court, and must necessarily
be so to prevent abuse."

And in giving the reasons for the admission of such
testimony, the court said:

" In such examination, the presumption is strong that
the witness will protect his credibility as far, at least, as
the truth will warrant.   All experience shows this to be
so.   It would be productive of great injustice often, if,
where a witness is produced of whom the opposite party
has never before heard, and who gives material testi-
mony, and from some source, or from the manner and
appearance of the witness, such party should learn that
most of the life of the witness had been spent in jails
and other prisons for crimes—if this fact could only be
shown by records existing in distant counties, and per-
haps states, which for the purposes of the trial are wholly
inaccessible.   No danger can result to the party intro-
ducing the witness from this class of inquiries, while
their exclusion might, in some cases, wholly defeat the
ends of justice."

It is true, this question presupposes a conviction, and
is not technically within the rule laid down in the Code,
which allows a witness to be asked whether he has been

*convicted* of a crime; but tested by the general principles of reasoning by which it is supported, it indicates the tendency, within proper bounds, of greater latitude on cross-examination to sift the character and antecedents of the witness, as essential to a proper estimation of his testimony by the jury, that the ends of justice may not be defeated.

In *Brandon* v. *People,* 42 N. Y. 266, the plaintiff in error, on her trial for grand larceny, was sworn as a witness on her own behalf, and on cross-examination was asked: "Have you ever been arrested for theft?" and the question was objected to as an attack upon her character, which she had not herself put in issue. Upon this point, Hunt, J., in delivering the opinion of the court, said:

"The question complained of was put to the witness for the purpose of impairing her credibility as a witness. It has been the practice of the courts of this state, from a very early period, to permit questions of this character to be put to the witness, and for the purpose indicated. Its abuse is guarded against in two modes: 1. By the privilege of the witness to decline to answer any question which may disgrace him, or may tend to charge him as a criminal; 2. By the power of the court of, its own motion to prohibit an unreasonable or oppressive cross-examination."

And it was held that the question was a proper one, and no suggestion of privilege having been made, it was properly overruled. In concurring, Ingram, J., said: "The question was one which the court, in the exercise of its discretion, had a right to allow to be put and answered;" citing *La Beau* v. *People,* 34 N. Y. 223; *Great Western T. Co.* v. *Loomis,* 32 Id. 127. It was further held in this case that, under the statute, when a prisoner testifies in his own behalf, he thereby becomes subject to the same

rules, and is called upon to submit to the same tests, which are legally applied to other witnesses.

In *People* v. *Brown,* 72 N. Y. 571, the defendant in error, while upon the witness-stand as a witness in his own behalf, was asked upon cross-examination the following question: "How many times have you been arrested ?" This was objected to, on the ground that it was incompetent to affect his credibility as a witness, and that he was privileged from answering it, etc.; and it was held that the witness was privileged from answering the question, and that the objection was well taken. As the case stood, the court deemed it unnecessary to determine whether the evidence sought to be obtained would or not have a tendency to affect the credibility of the witness, as the objection of privilege was fatal.

But in *People* v. *Crapo,* 76 N. Y. 289, upon the trial of an indictment for burglary and larceny, the prisoner on cross-examination was asked if he had not been arrested on a charge of larceny, which was objected to and overruled; and the court held (Folger and Earl, JJ., dissenting) that it did not legitimately tend to impair the credibility of the witness, and was incompetent for any purpose. (See also *Ryan* v. *People,* 79 N. Y. 600, 601.)

The principle upon which the court proceeds is the same as adopted in *People* v. *Elster,* ˙supra, that such evidence is inadmissible to affect the credibility of the witness, nor tends legitimately to have that effect, because of the legal presumption that, until convicted, the witness was presumed innocent. Although in *Brandon* v. *People, supra,* the specific objection was not made that such evidence was incompetent to affect the credibility of the witness, yet the court plainly understood that the question was put for that purpose; and as the witness had not claimed his privilege, that the question was "one which the court, in the exercise of its discretion, had a right to allow to

be put and answered"—or how are we to understand the
language of Hunt and Ingram, JJ. ?   It is true, a crimi-
nal arrest is no evidence of a crime, but, as Campbell, J.,
said, "it is nevertheless more or less calculated, unex-
plained, to prejudice the credit of the witness who ad-
mits it." (*Driscoll* v. *People, supra.*)   It seems to me
that these later New York decisions grew out of the fear
that where the accused was a witness on his own behalf
the exclusion of such evidence was "necessary to prevent
a conviction for one offense by proof that the accused
was guilty of others" (Church, C. J., in *People* v. *Brown,
supra*), which would not apply to witnesses other than
the accused.

·In *Wilbur* v. *Flood*, 16 Mich. 43, the defendant , was
sworn as a witness in his own behalf, and controverted
the plaintiff's case.   Upon cross-examination he was
allowed, against objection, to be asked whether he was
ever confined in the state prison, and an exception was
taken to the ruling.   Campbell, J., in delivering the
opinion of the court, said:

"It has always been found necessary to allow witnesses
to be cross examined, not only upon the facts involved
in the issue, but also upon such collateral matters as may
enable the jury to appreciate their fairness and reliability.
To this end a large latitude has been given, where cir-
cumstances seem to justify it, in allowing a full inquiry
into the history of witnesses, and in many other things
tending to illustrate their character.   This may be useful
in enabling the court or jury to comprehend just what
sort of person they are called upon to believe, and such
knowledge is often very desirable.   It may be quite as
necessary, especially where strange or suspicious witnesses
are brought forward, to enable counsel to extract the whole
truth from them on the merits. . . . . It has always been
held a witness may, on cross-examination, within reason-

able limits, be very thoroughly sifted upon his character and antecedents. The court has a discretion as to how far propriety will allow this to be done in a given case, and will, or should, prevent any needless or wanton abuse of the power. But within this discretion, we think a witness may be asked concerning all antecedents which are really significant, and which will explain his credibility; and it is certain that proof of punishment in a state prison may be an important fact for that purpose; and it is not very easy to conceive why this knowledge may not be as properly derived from the witness as from other sources. He must be better acquainted than others with his own history, and is under no temptation to make his own case worse than the truth will warrant. There can be with him no mistakes of identity. If there are any extenuating circumstances, no one else can so readily recall them. We think the case comes within the well-established rule of cross-examination, and that the few authorities which seem to doubt it have been misunderstood, or else have been based upon a fallacious course of reasoning, which would, in nine cases out of ten, prevent an honest witness from obtaining better credit than an abandoned ruffian."

· This case, like *Real* v. *People*, *supra*, involved a question of similar purport, but it will be seen subsequently that the court carried the consequences of its reasoning to include inquiries concerning any serious charge brought against the witness.

In *Clemens* v. *Conrad*, 19 Mich. 170, a witness called by the defendant was asked on cross-examination: "Were you indicted in Sandusky, in 1865, for smuggling?" This was objected to, but allowed by the court. Upon appeal this was held not error, Cooley, C. J., warmly approving the doctrine of the law as applicable to such cases as laid down in *Wilbur* v. *Flood*, *supra*. In *Hamil-*

*ton* v. *People,* 29 Mich. 183, it was held not error to allow a witness to be asked if he had deserted, or another to be asked if he had been charged with a crime; and in *Driscoll* v. *People,* 47 Id. 417, a witness having been asked on cross-examination whether he had been charged jointly with a cousin with robbing a trunk in his uncle's house, etc., Campbell, J., said: "A witness may be asked on cross-examination, within the proper discretion of the court, not only concerning his conviction, but also concerning any serious charge brought against him." See also *Leland* v. *Kauth,* Id. 508. In *Hanoff* v. *State,* 37 Ohio St. 180, the plaintiff in error was indicted for murder, and on his trial gave testimony in his own behalf. On cross-examination by the state, he was asked if he had not once been arrested for an assault with intent to kill, to which question he objected; but the court overruled the objection; and thereupon, without claiming his privilege, he answered. Held, that the limit of such cross-examination on matters not relevant to the issue, for the purpose of judging of his character and credit from his own voluntary admissions, rest in the sound discretion of the court trying the cause, and the judgment will not be reversed unless it appears from the record that such discretion has been abused, to the prejudice of the party. (See also *Wroe* v. *State,* 20 Id. 460.)

Where the answer of the witness will have a tendency to expose him to a criminal charge, the authorities are clear that he is not bound to answer, but may claim his privilege. But where the plain intent is to discredit or disgrace the witness, the authorities indicate much difference of opinion. (1 Whart. Crim. Law, sec. 809, and note.)

Stephen, in his digest of the law of evidence, expounds the law as follows:

"When a witness is cross-examined he may be asked any question which tends: 1. To test his accuracy, veracity, or credibility; or 2. To shake his credit by injuring his character. He may be compelled to answer any such question, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself, except in the case provided for in article 120, namely, where the answer might expose him to a criminal charge or penalty."

Mr. Greenleaf says:

"Where the inquiry relates to transactions comparatively recent, bearing directly upon the character and moral principle of the witness, and therefore essential to the due estimation of his testimony by the jury, learned judges of late have been disposed to allow it." (1 Greenl. Ev., sec. 459, and note.)

And Mr. Wharton, in his recent work on Criminal Evidence, says:

"In this country there has been some hesitation in permitting a question the answer to which merely imputes disgrace, but touches on matters of record; but the tendency now is, if the question be given for the purpose of honestly discrediting a witness, to require an answer." (Section 474, and note.)

By placing such inquiries within the sound discretion of the court, the past lives of witnesses are not liable to be ransacked and exposed; for against such unreasonable and oppressive cross-examinations the power of the court may be interposed, on its own motion, to protect the witness and prohibit such questions. In the liberality allowed on cross-examinations, to promote the ends of justice, a sound discretion will never sanction inquiries the sole purpose of which is to disgrace the witness, and not to test his credibility. And whenever such is the object of it, it is the duty of the court to disallow it, and

to confine the cross-examination to proper limits. It will be seen, therefore, that the abuse of such a cross-examination is guarded against: 1. By the privilege of the witness to decline to answer any question which may disgrace him, or may tend to charge him as a criminal (Code, sec. 837); and 2. By the power of the court to interpose and to protect the witness, of its own motion. In this case there is no suggestion of privilege, nor any claimed; and when this is so, we think the court, in the exercise of its discretion, may exclude such questions, or allow them, as the ends of justice may seem to require. (*Great Western* v. *Loomis*, 32 N. Y. 127; *Connors* v. *People*, 50 Id. 240.)

As these constitute all the objections we have deemed it necessary to consider, it follows that the judgment of the court below must be affirmed.