†CHAS. N. SNYDER, ASSIGNEE v. SALATHIEL BETZ ET AL.

VALIDITY OF UNRECORDED MORTGAGE AS AGAINST THE CLAIM OF AN ASSIGNEE.

Under the statutes of Ohio, providing for the execution and recording of mortgages of lands, a mortgage duly executed, but not recorded; is as between the parties thereto, a valid specific lien on the lands described; but is void, and of no effect, as against an assignee for the benefit of creditors, holding the legal title by a subsequent deed of assignment from the mortgagor.

ERROR to reverse judgments of Common Pleas and Probate Courts of Columbiana county.

The original proceeding was a petition filed in the probate court by the assignee, to sel the real estate of the assignor, and to adjust the liens thereon. No question was made upon any liens, except that of the defendant, Salathiel Betz, and which arose upon the following statement of facts : On December 1, 1885, the assignor, Jas. M. Hape, executed and delivered a mortgage deed of all his real estate to Salathiel Betz, to secure the payment of $3,000, and on the 21st day of December , 1885, the same was delivered for record. On December 16, 1885, said Jas. M. Hape assigned all his property, real and personal, to Chas. N. Snyder, in trust for the benefit of the creditors of said assignor, by deed duly executed to convey lands, and said assignee accepted said trust, and on the 17th day of December, 1885, filed the same for record in the office of the probate judge of said county. The proceeding was commenced by the assignee in the probate court, January 16, 1886, and the question of priority between the assignment deed and the mortgage deed, was first raised by demurrer to the cross-petition of the defendant Betz, and afterwards on demurrer of defendant Betz to the first defense of the assignee in his answer to said cross-petition. The demurrer in both cases was decided in favor of the priority of the mortgage deed, and judgment was entered for defendant Betz. The assignee appealed all issues raised as to the defendant Betz's mortgage, to the court of common pleas, where the case was submitted on an agreed, statement of facts, hereinbefore stated, and all of which facts were set up in the pleadings in the probate court. The court of common pleas entered the same decree as the probate court. A bill of exceptions was taken by the assignee, upon the trial in the common pleas, embodying the agreed statement of facts.

LAUBIE, J.

The question in this case is to be determined by the construction of secs. 4133 and 6335, Rev. Stat. Sec. 4133, relates to the registration of mortgages of lands, and it provides that mortgage deeds executed agreeably to the provisions of that chapter, "shall take effect from the time the same are delivered to the recorder of the proper county for record." No claim

---

†The judgment in this case was affirmed by the Supreme Court. See opinion, 48 O. S., 492.

is made that the section differs in effect, or that it should be construed differently than section seven of the act of February 22, 1831, as defined by the declaratory act of March 16, 1838, of which it is a revision. Indeed, the legal effect of the two sections upon the question here made, may be said to be identical, although the revised section does not contain all the words of the declaratory act. Ash v. Ash, 9 O. S., 383, 387.

Section 6335, relates to voluntary assignment for the benefit of creditors, and declares that "any such assignment shall take effect only from the time of its delivery to the probate judge, and the exact time of such delivery shall be indorsed thereon by the probate judge, who shall immediately note the filing on the journal of the court."

This seems to have been intended to certainly establish and fix a time when such assignment should take effect, in determining priority between it and other transfers of, or liens upon the property assigned. Beyond this, what effect such provision, and the leaving out of said sec. 4133 the words of the declaratory act of 1838, "and have preference," may have upon the question in this case, I don't care to consider. The pleadings, as well as the agreed statement of facts, show that the Betz mortgage was properly executed and delivered before, but was not filed for record until after the deed of assignment had been filed by the assignee with the probate judge; and the question is: Did the assignee take the lands subject to the lien of the unrecorded mortgage?

The general rule in equity undoubtedly is, that an assignee for the benefit creditors takes the lands of his assignor subject to all equitable, as well as legal liens, existing against the same in the hands of such assignor, at the time of the assignment, and that such assignee stands in no better position in respect to the lands than did his assignor. Does that principle prevail in this state? If it does prevail, then an unrecorded mortgage is a good and valid lien as against such assignee, for no one disputes that between the immediate parties thereto, an unrecorded mortgage is a specific, equitable lien upon the land. While in no case on all fours with this as to facts, has been before the Supreme Court, the principles settled and announced by that court, in construing the registry laws of the state, in a great many cases, some of them on a similar state of facts, answer this question, in the negative, and settles it beyond a doubt, in our opinion. Ever since the case of Stansell v. Roberts, 13 O., 148, the uniform holding of the Supreme Court has been, that by the provisions of our registration acts, a mortgage of lands is of no force or effect at law, or in equity, until executed and filed for record in accordance with the requirements of said acts, as against all persons not parties thereto, who acquire subsequently a legal title to the lands, or a legal lien thereon, though they may have had prior actual notice of such mortgage; and so often and so firmly has this doctrine been declared, that as early as 1854 the Supreme Court announced that it had become a rule of property in this state. Fosdick v. Barr, 3 O. S., 471. Here then we have a plain broad principle, broad as a highway, and so plain that "he who runs may read" as comprehensive as language can make it, to guide us in such cases, and which, if followed, conclusively determines the question in this case in favor of the assignee. While admitting this to be the intent of the acts in question, as declared by our court of last resort, counsel for defendant claim that it does not, and should not, include an assignee for the benefit of creditors, because that court seeks to restrict the application of the doctrine rather than to extend it, and confines its application to such cases only as have already been embraced within it by judicial decree; and it is gravely asserted, that no case can be found in our reports where the Supreme Court has extended the application of this rule to an assignee of lands for the benefit of creditors, or that places such an assignee in a better position in respect to the land than his assignor.

It is true that the Supreme Court has not had a case before it, so far as we know, presenting the precise state of facts as this—where an unrecorded, but legally executed mortgage, is set up against a subsequent deed of assignment for the benefit of creditors. If we were deciding cases upon a trivial difference of facts, this would have great weight; but cases are to be decided upon settled principles, and to be right must be, and not upon such differences of facts. If the principles bear harshly in particular cases, let the legislative department provide for it; that is its province, not that of the courts. We are not able to see why an exception to this rule should be made against an assignee for the benefit of creditors; certainly the rule is broad enough to embrace such assignee, equally with any other person, who acquires the legal title, and so the Supreme Court has held upon two occasions.

If the general rule in equity prevails in this state, that an assignee for the benefit of creditors takes title to the lands assigned subject to all equitable liens, good against it in the hands of his assignor, and stands in no better position in respect to the lands than his assignor, then a contract for a mortgage, or a mortgage defectively executed, whether recorded or not, would be superior to a deed of assignment subsequently made for the benefit of creditors, because either instrument constitutes in equity a *specific* lien upon the property, which would be enforced against the party making it. If, however, we find that in this state it is held that such instruments do constitute specific liens upon the property, good and effectual between the immediate parties thereto, but that they are void and of no effect under the registration acts of the state, as against a subsequent, voluntary assignment for creditors, then the general equitable rule referred to does not prevail in this state in such cases; and it is clear as that two and two make four, that an unrecorded mortgage, though duly executed, would be equally void and of no effect. The principle that covers one, covers all equally. The case of Bloom v. Noggle et al., 4 O. S., 45, presents the first case suggested. In that case

a contract for a mortgage was set up as a valid lien upon the lands as against a subsequent voluntary assignment of the lands for the benefit of creditors, and the court held, that while it was a specific lien upon the lands in equity, as between the immediate parties thereto, it was void and of no effect as against the assignees. Judge Ranney, in delivering the opinion of the court in that case, has said all that can well be said on this subject, and it need not be repeated here. I cannot forbear however from quoting the following, page 54: "The principle deduced from all the cases is, that the legal rights of such (third) persons cannot be displaced at the instance of the holder of the prior unrecorded mortgage, or contract for a mortgage, although acquired with notice of such mortgage or contract * * * * So far as may be necessary for their protection, such a thing as an equitable mortgage is wholly unknown * * *;" and again on page 56, "whether, therefore, we consider the assignees in this case as purchasers for a valuable consideration, or as holding the legal title in trust for the benefit of all the creditors, it is equally clear that it cannot be taken from them by the complainants. A contract for a mortgage cannot have greater effect than one defectively executed, or one perfectly executed, but not recorded."

The court it will be seen from this, and from other expressions, very consistently brought each of the cases suggested by me within the principle announced, and although it may be said that this was mere "*obiter dictum*," it does not strip it of its conclusive force.

The fact that the same court had previously decided that a duly executed unrecorded mortgage was void as against a subsequent judgment lien, was a sufficient justification for thus grouping these cases together, as being governed by the same principle, if any precedent was needed. If such a mortgage is void as against judgment creditors, how could it possibly be good as against one who acquires and holds the legal title in trust for creditors, not as a mere security for their debts, but in trust to raise a fund with which to pay their debts? Indeed, the property is constructively in the possession of the creditors, by virtue of a legal conveyance; "for the possession of the assignee is the possession of the creditors," 42 O. S., 299, and hence the stronger reason why it cannot be wrested from them by the holder of an unrecorded mortgage. The case of Erwin v. Shuey, assignee, 8 O. S., 509, presents the second case suggested herein, of a duly recorded, but defectively executed mortgage, as against a subsequent voluntary assignment for the benefit of creditors. The mortgage in that case was not executed in accordance with the requirements of the acts in question, being without a seal, and although recorded prior to the assignment, the court held that it was void as against the assignee, upon the authority of Bloom v. Noggle, supra; and those two cases have been cited with approbation repeatedly by the Supreme Court. Thus, in these two instances, we find the Supreme Court has held that an equitable mortgage, good between the immediate parties thereto, is void as against a subsequent voluntary assignment for the benefit of creditors; and an unrecorded mortgage, duly executed, is nothing more than an equitable mortgage under the act referred to, and must fall with the others. Each is a specific lien in equity between the immediate parties thereto, but of no force or effect as against an assignee or other person holding the legal title under a subsequent conveyance, and both reason and authority are against the proposition claimed by counsel for defendant herein.

The cases cited by counsel for defendant do not sustain a different doctrine.

In the case of Gill v. Pinney, 12 O. S., 38, the court held that an unrecorded mortgage was good against creditors represented by an administrator, but did it upon the express ground that the creditors had acquired no title to, or specific legal lien upon the premises, and whatever lien they, or the administrator, did have, was not the result of any voluntary act of the debtor, or of any diligence upon their part; and therefore distinguished it from preceding cases, where parties had obtained a legal title to, or specific legal lien on the lands, by the act of the owner, and of diligence on their part. "A creditor," says the court, "acquires no specific lien by his debtor's death. If he was a mere general creditor before the death, he remains so after it. His position with respect to other creditors remains unchanged. He and they have the same right, through the intervention of an administrator, to subject to the payment of their debts, if necessary, all the property of their debtor which has passed to his heirs. This right, which constitutes the lien in question, is acquired by no act of diligence on the part of the creditor. It arises from no act of the debtor, but results merely from the act of God. The court did not attempt to overthrow any of the reported cases, but recognized them and the rule fully, only refusing to ex end the principle decided in those cases to a case of a mere general lien of a creditor against the lands of his decease I debtor, and with that I have no disposition to quarrel.

Morgan v. Kinney, 38 O. S., 610, is a case of a legal lien—a levy of an execution existing at the time of the assignment, and in no manner bears upon the question made here. The general language of the judge delivering the opinion must be taken, of course, as referring to cases of the same class he was deciding—cases of valid legal liens on the lands at the date of the assignment. In the same volume, page 312, in Bundy v. Iron Company, the same court affirmed the doctrine of the nugatory character of equitable mortgages I have heretofore described.

Great stress is laid by counsel upon the language of judge Minshall, in Kemper v. Campbell 44 O. S., 210. That was a case of a deed, absolute in form, though intended between the parties as a mortgage, and it was passed upon and treated as an absolute deed, and held to have precedence over the assignment, because recorded before the expiration of the six

months allowed by law for the recording of deeds.  The language of Judge Minshall referred to, in announcing the opinion of the court, is as follows:

"It is claimed in argument, by the defendant in error, that this case should be governed by the decision in Gill v. Pinney, 12 O. S., 38, where it was held that a mortgage, filed for record after the death of the mortgagor, secured a lien to the mortgagee against the general creditors of the estate.  If that case is right in principle, it is difficult to perceive why it should not apply to a case where a duly executed mortgage is not filed for record until after an assignment has been made by the mortgagor.  A different view seems to have been taken in the subsequent decisions of this court as to chattel mortgages, not available as against general creditors, from the omission of certain statutory requirements, and which defects existed at the time of the assignment.  Hanes v. Tiffany, 25 O. S., 549; Kilbourne v. Fay, 29 O. S., 264; but no conclusion has been reached, either way, upon this question by a majority of the court."  With all due deference to Judge Minshall, and his well known learning and ability, I trust I may be allowed to say, that the able court that decided Gill v. Pinney, saw and undertook to declare a difference in principle between the case then before it, and the case where the opposing interest was a conveyance of the legal title, or of a specific legal lien, acquired from the mortgagor, or by the diligence of the holder; and to us the difference is equally plain.  The confusion arises, I take it, in not carefully observing the true extent of the rule referred to.

The policy of our registration act is plain and unmistakable; the intent and design of the legislature was to "put at rest all the vexed questions as to precedence, and to enable all persons certainly to know whether the property of persons to whom they extend credit is incumbered or not, without being involved in the vexed questions of prior equities and notice."  Holiday v. Franklin Bank, 16 O., 539; Fosdick v. Barr, 3 O. S, 471, 474.  It establishes a fixed unvarying rule of notice, so that all persons may obtain uncontrollable *legal* interests in lands, unaffected by mortgages not of record, in the absence of fraud; and its effect is to prevent fraud in the holding of secret mortgages.  Mayham v. Coombs 14 O., 429, 434; Bloom v. Noggle, 4 O. S., 45, 55.

In the early cases, the language of the courts was undoubtedly too general in stating the rule; but this was corrected, and the rule certainly fixed and defined in Fosdick v. Barr and Bloom v. Noggle et al., supra.  It was there shown that the statute dealt in legal titles and interests only— those interests in, and liens upon lands, which the laws of the state required to be of record, whether by deed, mortgage, judgment lien, or levy, leaving equitable liens to be determined upon general equity principles.

Judge Ranney, whose accurate use of words in defining legal principles is proverbial, in Bloom v. Noggle et al., p. 52, says:  "In the numerous cases that have arisen since the passage of the statutes, almost every variety of unrecorded instrument, operating by way of mortgage upon real estate, has been passed upon; but in no single instance have the subsequent y acquired *legal* rights of third persons been displaced by such instruments, whether such rights existed by deed, mortgage, judgment lien or levy upon the property."  The italics are his own.  Again, upon page 54, he says:  "The doctrine of earlier equities only applies when the contesting interest is only an equity; but when that has been clothed with legal protection, it cannot be displaced by anything short of a prior duly recorded instrument."

It is the interests, therefore, of third persons, acquired by deed or mortgage from the owner, duly recorded, or by judgment lien or levy upon the property, involving in their acquisition voluntary action upon the part of such owner, and diligence upon the part of such third person, to which preference is given over equitable mortgages.  The question can only arise between the holder of an equitable mortgage and one who has subsequently acquired from the mortgagor a legal conveyance or mortgage of the property, duly recorded, or who has obtained a judgment lien or levy upon t.  The protection of the statute, can only be invoked as against such equitable mortgages, in aid of one, who by the act of the mortgagor and his own diligence, or his own diligence alone, has subsequently acquired such legal interest.  This diligence, of course, may consist solely in being first in entering his conveyance for record, 16 Ohio, 539, *supra;* or in the prior filing of a deed of assignment with the probate judge under sec. 6335.  The extent of the doctrine was properly understood and defined in Gill v. Pinney, when the court declared that a creditor acquires no *specific* lien on the lands of his debtor, by his debtor's death, and that the right which constitutes the lien in question in that case "is acquired by no act of diligence on the part of the creditor.  It arises from no act of the debtor, but results merely from the act of God."

In thus awarding preference to such legal interests and liens, there is not only no injustice, but a sure safe-guard against fraud; and why should he who obtains priority of registry or lien, be singled out as an exception, because he is a creditor?  Creditors are by far the largest, if not the only class of persons who may be defrauded by these secret liens, and therefore it may well be said, that the statute was designed for their protection.  That it was designed for their protection was very early declared, as we have seen, and constantly maintained by the courts, in all cases where the creditor had acquired a legal title, or specific legal lien, of record anterior to the recording of the mortgage; and why it should be doubted now because in equity, prior to the statutes, the rule was different, is far from clear, to say the least.  In every one of the numerous cases before the Supreme Court, this equitable rule was pressed upon the attention of the court, but in every instance it was met with the declaration that the legislature had seen fit to designedly change the rule.  Indeed, creditors are a favored class in law.

The old maxim, "that a man must be just before he is generous," has lost nothing of its savor because of its age; and not only must he be just in the sense referred to, but in all his dealing with his creditors he must equally be just and act in good faith; and not only he, but every person dealing with such debtor in respect to his property, must so act, as to such creditors, even though they be purchasers for full value. As a part of current history, it is well known that the whole business of the country is done, substantially, upon the basis of "credit," and that so long as public confidence is maintained in the system, a general prosperity prevails; but the moment that that confidence is suspended or lost, that moment general disaster and ruin fall upon the whole state. In view of this the legislative, as well as all other departments of government, seek to foster and maintain this public confidence in the system, so far as the system is legitimate, and to that end statutes are designed and enacted for the benefit and protection of the creditor class, in their dealings with the debtor class. The stability of the system rests largely upon the faith of the creditor in the ability of the debtor to pay—upon the amount of the debtor's unincumbered property, and upon the knowledge that the creditor's rights against such property cannot be affected by any secret liens; and hence, for their protection, as far as it goes, the legislature designed and enacted the registration laws, not only as to real, but as to personal property; and thus limited in operation, they accord well with a just public policy. (See Thevenin v. Slocum, 16 Ohio, 528; Fowble v. Rayberg, 4 O. S., 55). It entails no hardship upon the holders of mortgages to fulfill the statutory requirement; it is a matter of easy accomplishment, and a matter of which no one can be said to be ignorant of at this late day. But if it should occasionally press harshly upon innocent parties, it cannot change the construction to be given to the statute, any more than to the many other statutes that work the same result.

All there is of "Gill v Pinney," is that the court did not feel called upon to extend the rule to those, who had not by voluntary action of their debtor, or by their own diligence, obtained and recorded a legal title to, or a specific legal lien upon the lands. And the same distinction was made as against the heirs of the equitable mortgagor in the case of Sidle v. Maxwell et al., 4 O. S., 236, by the same judges that decided at the same term Bloom v. Noggle et al., *supra*. The principal as thus defined, whether right or wrong, has been a rule of property in this state nearly half a century, and it is too late now after being acted upon, and titles acquired thereunder during all that time, to be disturbed or doubted; and more especially because the legislative department, which directly represents the people of the state, and whose duty it is to correct any injustice in our laws, whether written or unwritten, has been content to leave the rule undisturbed. In saying this, I merely repeat the substance of what was much better said by the Supreme Court in Fosdick v. Barr and Bloom v. Noggle et al., *supra*.

Counsel for defendant also rely upon the case of Lemmon, assignee v. Hutchins et al., *ante* 217. In that case, the mortgages in question were regular in form, on their face properly executed, and duly recorded before the assignment. Two persons apparently executed the mortgages as mortgagors, and, according to the certificate of acknowledgment, both appeared before the officer and acknowledged the same, in the presence of two witnesses. One of these persons thus executing these mortgages, was A. K. Hutchins, the assignor for the benefit of creditors. He actually approved and signed the first of these mortgages after its acknowledgment, but did not appear before the magistrate to acknowledge the same, and whether he signed the second and larger mortgage, does not appear; at least, either he or his brother, the other mortgagor, signed both of their names to this latter mortgage in the absence of the other, and acknowledged the same with the knowledge and assent of the other. The assignees sought to defeat the mortgages on the ground stated, of non-execution in fact, by one of the mortgagors; but the court held that the officer's certificate of acknowledgment was conclusive of the fact of execution by both, and could not be contradicted. Of course we are not called upon to criticise this holding, and I refer to it only to show that it fully disposed of the case, and all beyond that, therefore, may be regarded as mere dictum and to which the court gave no deliberate and critical investigation. The court did, however, proceed further unnecessarily (if the other holding be correct), and held that an assignee for the benefit of creditors, under a deed of assignment, stands in this state in no different or better position in respect to the lands assigned than his assignor, and that both assignor and assignee were estopped from disputing the validity of the mortgages. Judge Haynes, a very learned and able jurist, in announcing the opinion of the court, gives expression to that which shows that no deliberate and critical examination of this latter point was entered into by either counsel or court, for the reason, probably, that it was regarded as unnecessary to the final disposition of the case. On page 220, the judge says: "It was said that authorities might be shown in which it would appear that, under the decisions in Ohio, he (the assignee) would stand in a different or better position; but no such authorities have been shown. * * * "I thought there were some other cases, although I have been unable to find them;" and the only case referred to in this connection, was Hodgson v. Barrett, 33 O. S., 63, where some general expressions were used in regard to the manner in which an assignee takes property; but that case does not involve any question under the registration acts of the state. The question in that case was, whether the assignee could resist a recision of a purchase of personal property by his assignee unpaid for, but which was to be paid for on delivery. It is certain, therefore, that Bloom v. Noggle, and Erwin v. Shuey, assignee, supra, were not called to the attention of the court in Lemmon, assignee v.

Hutchins, *supra*, and no weight, therefore, can properly be given to its opinion on this question. I do not, however, wish to be understood as expressing any opinion against the conclusion arrived at, that the assignee and assignor were each estopped from disputing the validity of the mortgage in that case, under the facts disclosed. It might be possible to uphold that conclusion upon the facts as they appeared, and upon the law of estoppels, and the authority of Strang v. Beach, 11, O. S., 283, and Hurd v. Robinson, *Ib.* 232; but it is unnecessary to express any opinion on that point.

The case of Stewart v. Hopkins, 3 ) O. S., 502, seems to be relied on by defendant's counsel, but why, I am unable to understand. It is there held that under the laws of this state, "an unrecorded mortgage, as between the parties thereto, is valid; and as to all others, takes effect from the time it is left for record." I see no consolation for the defendants herein in that holding.

Judgments reversed, and decree for plaintiff upon the agreed statement of facts.

W. G. Wells and C. N. Snyder, for plaintiff in error.

Wallace, Billingsley & Taylor, for defendant in error.