Argued December 4, 1973, reversed and remanded
February 14, 1974

MARSHALL, *Appellant, v.* MARTINSON ET AL,
*Respondents.*
518 P2d 1312

*Millard M. Becker,* Portland, argued the cause for appellant. On the briefs were Becker & Sipprell and William F. Schulte, Portland.

*George M. Joseph,* Portland, argued the cause for respondents. With him on the brief were James G. Breathouwer and Bemis, Breathouwer & Joseph, Portland.

TONGUE, J.

This is an action for damages for personal injuries sustained in an automobile accident which occurred on the interstate highway near Cascade Locks as defendants' automobile was overtaking and passing plaintiff's pickup truck. The case was tried before a jury, which returned a verdict in favor of defendants. Plaintiff appeals from the resulting judgment, contending that the trial court erred in excluding evidence offered by plaintiff and in refusing to give requested instructions to the jury.[1]

1. *Impeachment of witness by proof of conviction of any crime.*

Plaintiff's first assignment of error is that the trial court erred in sustaining defendants' objection to the introduction in evidence of a record of the conviction of one of the defendants on a state charge for the crime of driving under the influence of intoxicating liquor.

Defendants objected to that offer of proof on the ground that "[I]t is not the type of crime that the law

---

[1] This is a companion case to Marshall v. Martinson, 264 Or 470, 506 P2d 172 (1973).

condones as impeaching of the witness' * * * character, * * *." In sustaining the objection the trial court stated that "* * * [I]t's an abhorrence to me to think we have to question everybody's credibility because of driving under the influence of intoxicants * * *"; that in this case (in which there was considerable evidence that defendants had been drinking prior to the accident) such evidence would have "a tendency to influence the jury not on the merits * * *;" that as a trial judge he had the duty "to see that everybody gets a fair trial," and that "[O]n prejudice and prejudice alone I am not going to allow it."

ORS 45.600 provides:

"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth is bad or that his moral character is such as to render him unworthy of belief; but he may not be impeached by evidence of particular wrongful acts, except that it may be shown by his examination or by the record of the judgment, that he has been convicted of *a crime.*" (Emphasis added)

In some states similar statutes have been construed by courts to the effect that the offense must be one involving "moral turpitude." In other states courts have adopted a rule that gives a trial judge discretion in holding whether a particular conviction substantially affects the credibility of a witness. These decisions are criticized in McCormick on Evidence (2d ed 1972) 85-86, § 43, in favor of the advantages of a "clear and certain" rule for purposes of judicial administration.[2]

---

[2] According to McCormick on Evidence (2d ed 1972) 85-86, § 43:

"A few jurisdictions seem to adhere to the loose common law definition, described above, of 'infamous crimes.' The Califor-

In Oregon, however, there is no such uncertainty in the prior decisions of this court. In *State v. Rush,* 248 Or 568, 436 P2d 266 (1968), we said (at 570-71):

"From the time of the decision in *State v. Bacon,* supra, [13 Or 143, 9 P 393 (1886)] this court has consistently held that ORS 45.600 permits, as it clearly states, that 'A witness may be impeached by the party against whom he was called * * * by his examination or by the record of the judgment, that he has been convicted of a crime.' Whatever the logic may be of arguing that no evidence should be received concerning conviction of a crime which would not by its nature be thought of as a basis for questioning credibility, the rule is nonetheless clearly established." (Citing numerous cases, including criminal cases in which defendants had been impeached by proof of the prior convictions of crimes.)

---

nia Code and some other codes specify only 'felonies,' a limitation which is at least simple to apply. Similarly easy is the administration of a rule which includes 'any felony or misdemeanor.' This is the construction which some of the courts place upon statutes worded in terms of 'crime' or 'any crime.' But most courts have been unwilling to accept such simple mechanical tests, and have read into such general statutes the requirement that as to misdemeanors at least, the offense must be one involving 'moral turpitude.' Thus does the serpent of uncertainty crawl into the Eden of trial administration. Still more uncertain is the rule that gives the trial judge discretion on the basis of whether the particular conviction substantially affects the credibility of the witness. Under the rule requiring moral turpitude, it seems questionable whether the creation of a detailed catalog of crimes involving 'moral turpitude' and its application at the trial and on appeal is not a waste of judicial energy in view of the size of the problem. Moreover, shifting the burden to the judge's discretion raises problems as to the adequacy of his information or basis upon which to exercise his discretion. A rule involving a clear and certain definition has advantages in administration. The proposal of the Uniform Rules to limit impeachment to conviction of crimes 'involving dishonesty or false statement' is a fairly definite but not arbitrary criterion."

■ We still adhere to that rule. By the adoption of what is now ORS 45.600 the Oregon legislature has apparently adopted the view, as a matter of public policy, that a jury may properly find that a person who has been convicted of any crime may be less reliable as a witness than a person who has never been convicted of any crime.

While we may or may not agree with this view, we believe that because ORS 45.600 is clear and unambiguous to that effect, any change to be made in this rule must be made by the legislature, rather than by this court.

■ It follows that the trial court had no discretion to reject plaintiff's offer of proof of the prior conviction upon the ground that undue prejudice would result. It also follows that this case must be remanded for a new trial. Because, however, the questions raised by plaintiff's additional assignments of error may again be raised upon the retrial of this case, we shall consider them.

## 2. *Admissibility of official weather records.*

Plaintiff next assigns as error the exclusion from evidence of certified copies of official weather records showing wind velocity at various times during the day of the accident, as recorded at weather stations located at Portland, The Dalles and Cascade Locks. Under ORS 43.350, 43.360 and 43.370 certified copies of such records were admissible in evidence, if relevant to any issue in this case.

One of defendants' contentions was that the action of wind against the side of the "camper" or "canopy" body on plaintiff's empty pickup truck could have

caused it to "pop into the Buick." Plaintiff and two witnesses denied that it was windy at that time. Defendants and another witness testified to the contrary.

The existence or nonexistence of strong winds at the time and place of the accident being an issue in the case, it follows that official weather records with recordings of wind velocities would have been relevant provided that such recordings were made at times and places sufficiently near to that of the accident to have probative value and not be too "remote" in time or place.

■ Questions of remoteness in time and place are ordinarily left to the discretion of the trial judge. *Clement v. Cummings*, 212 Or 161, 167, 317 P2d 579 (1957).

■ The weather records offered in this case were of recordings taken at Portland, The Dalles and Cascade Locks. The weather stations at both Portland and The Dalles are many miles distant from the point of the accident. The weather station at Cascade Locks was four miles from the point of the accident, but the last recording at that station on the day of the accident was made at 5:05 p.m., over four hours prior to the time of the accident, which occurred at 10:45 p.m.

Under these facts, we agree with the holding of the trial judge to the effect that a lapse of four hours between recording of the data and the time of the accident was too long a period to qualify this evidence as relevant.

3. *Exclusion of opinion of expert witness that the accident could not have happened in manner contended by defendants.*

Plaintiff's third assignment of error is that the trial

court erred in sustaining objections to a hypothetical question by plaintiff's counsel to his expert witness, an engineer. By that question the witness was asked to assume, among other things, that the plaintiff's pickup truck was traveling in the right-hand lane of the four-lane highway at 35 miles per hour and "veered into the path" of defendants' car as the car was starting to pass plaintiff at a speed of 70 to 75 miles per hour by "moving straight ahead" in the left-hand lane "within 12 to 18 inches of the * * * center guard rail," all as contended by defendants, and also to assume that the right front corner of defendants' car made contact with "the right front corner into the left wheel well" of plaintiff's pickup truck and that after the impact defendants' car "came to rest backward" on the right-hand guard rail, while plaintiff's vehicle "went over [that] * * * guard rail and broke a sign." Based upon these assumed facts the witness was asked "whether the faster vehicle after the collision would make contact with the center guard rail on the left."

After objections to this question were sustained, plaintiff made an offer of proof of the testimony of this witness to the effect that the accident could not have happened as contended by defendants because if defendants' car had been hit by the "veering" of plaintiff's pickup truck into defendants' lane of traffic the car would have been caused to go out of control and to "rotate" and that there was not "enough room between the center line and [center] guard rail for the Buick" to proceed without hitting the center guard rail.

Defendants' first objection to the hypothetical question is that it assumed facts not in evidence, such as the weight of the two vehicles and "the inclusion of facts about the guard rail not testified to." Because,

however, this case must be retried for other reasons, we may assume that any such discrepancies can be remedied at that time.

Defendants also object upon the ground that this inquiry was "speculative" and this was the primary basis upon which defendants' objection was sustained by the trial court, which appeared to be under the impression that "scientific exactness" was required. Because this same objection can be anticipated on retrial, it is necessary to consider it further.

We may agree with plaintiff's contention that "scientific exactness" may not be a requirement for the admissibility of expert testimony in such a case. It does not follow, however, that the trial court erred in rejecting that offered expert testimony in this case upon objection that it was "speculative."

At the time of trial the discussion between court and counsel touched on the problem of automobile accident "reconstruction." However, no mention is made by plaintiff in its briefs in this court of the many problems relating to expert testimony on that subject and no cases are cited by plaintiff in which this or other courts have held that testimony similar to that which was offered in this case was admissible in a case involving similar facts. As a result, defendants were not called upon to respond with a discussion of the problems of "accident reconstruction" or by the citation of cases holding to the contrary.

Under these circumstances it would be inappropriate for the court to undertake to make any definitive holdings in this case on this important and complex subject beyond those which would appear to be required for the purpose of the retrial of this case.

Much of the current writing on the developing

"science" of automobile accident reconstruction by experts, based upon the examination of skidmarks, vehicular damage, and other "physical facts," appears to be concerned with the development of a reliable foundation in fact for expert opinion testimony on such subjects as the speed of a vehicle at the time of an accident, the "stopping distance" of such a vehicle, and the point or angle of impact in an accident involving two vehicles.[3]

In *Bailey v. Rhodes, Adm.*, 202 Or 511, 523, 276 P2d 713 (1954), it was held by this court that "one not an eyewitness cannot express an opinion, based solely upon the physical facts existing following an accident, as to the rate of speed prior to the accident."[4] Although that decision has been strongly criticized,[5] it has been cited with approval in several more recent decisions.[6]

In *Thomas v. Dad's Root Beer, Etc.*, 225 Or 166, 169, 356 P2d 418, 357 P2d 418 (1960), we held that this same rule "should apply also to testimony from one not an eyewitness to the accident concerning the point of impact on the highway." In *Vancil v. Poulson,*

---

[3] See, for example, Lacy, Automobile Accident Cases, Scientific Reconstruction, 1201 et seq (looseleaf); Schoone and Shapiro, Reconstruction of Automobile Accidents Through Lay and Scientific Testimony, 47 Marq L Rev 491 (1964); 10 Am Jur, Proof of Facts 137, Reconstruction of Accident (1961); 11 Blashfield, Automobile Law and Practice 601, § 431.3 (1968); 2 Jones on Evidence 627, § 1416 (1972).

[4] See also Everart v. Fischer, 75 Or 316, 325-330, 145 P 33, 147 P 189 (1915).

[5] Note: Automobile Accidents—Photography—Expert Testimony, 1 Will L J 596, 614 (1961). See also Note: Accident Reconstruction in Iowa, 53 Iowa L Rev 421 (1967).

[6] Wilson v. Overbey, 223 Or 256, 263, 354 P2d 319 (1960); Thomas v. Dad's Root Beer, Etc., 225 Or 166, 169, 356 P2d 418, 357 P2d 418 (1960); Webber v. Yaden et al, 232 Or 113, 116, 373 P2d 1007 (1962). See also Annots.: 29 ALR3d 248 (1970); 93 ALR2d 287 (1964); 66 ALR2d 1048 (1959); 38 ALR2d 13 (1954).

236 Or 314, 327, 388 P2d 444 (1964), we reaffirmed that holding.[7]

■ We are not called upon in this case to overrule either *Bailey v. Rhodes, supra,* or *Thomas v. Dad's Root Beer, Etc., supra.* Even assuming, however, that the science of accident reconstruction may progress to the point that the rulings in those cases should be re-examined, it does not follow that it was error for the trial court to exclude the expert opinion testimony in this case.

The expert witness in this case was called upon to go far beyond the expression of an opinion relating to speed or point of impact. By the hypothetical question to which objections were made in this case plaintiff's expert witness was asked to express an opinion whether, if the accident happened as contended by defendants, that was "enough room" for defendants' car to proceed without hitting the center guard rail. We agree that the trial judge did not err in sustaining objections to that question. The reason is that under the facts of this case the trial judge could properly find that there were so many varying factors involved in the problem presented by this question that the opinion of an expert witness in answer to that question would indeed have been "speculative," as observed by the trial judge in this case.[8]

---

[7] More recently, it was held in Carter v. Moberly, 263 Or 193, 206-07, 501 P2d 1276 (1972), that it was error for a trial court to sustain an objection to a question calling for the opinion of an expert witness to the effect that it would be "very unreliable" to attempt to make an accurate determination of the point of impact in a collision between two vehicles based upon the location of debris from the vehicles.

[8] Cf. Kale v. Douthitt, 274 F2d 476, 483 (4th Cir 1960), excluding an opinion whether, under the facts of that case, defendant had a "last clear chance" to avoid the accident, upon the ground

We believe that this holding is in accord with the views expressed by most of the courts which have had occasion to consider the problems of expert opinion testimony based upon scientific accident reconstruction.[⊚] As previously stated, no cases have been cited to us by plaintiff in which, under similar facts, a trial court has been overruled for sustaining an objection to such a question. Accordingly, we hold that the trial court did not err in sustaining the objections to that question in this case.

4. *Failure to give requested instruction—judicial notice of "laws of nature."*

■ Plaintiff assigns as error the refusal of the trial court to give a requested instruction that:

> "* * * [I]t is within your power as jurors, to determine from the evidence in a case, that the occurrence of the accident and the surrounding circumstances are sufficient, so that the occurrence of a particular accident, in and of itself, may establish that the said accident resulted from negligence."

We agree with defendants that this requested instruction was "equivalent to a res ipsa loquitur instruction" and that it was improper under the facts of this case.

■ Plaintiff next assigns as error the failure of the

that "there are too many varying factors." See also Fishman v. Silva, 116 Cal App 1, 2 P2d 473 (1931); and Baker, Limitations on Accident Reconstruction, 8 Def L J 3 (1960).

[⊚] See Blashfield, Automobile Law and Practice 629 ff, § 431.6 (1968), and cases cited therein. See also Lacy, Automobile Accident Cases, Scientific Reconstruction 1201 et seq (looseleaf); Open Forum, Scientific Reconstruction of an Automobile Accident, 25 Ins C J 438 (1958).

Cf. Wells Truckways v. Cebrian, 122 Cal App 2d 666, 265 P2d 557 (1954).

trial court to give requested instructions defining "direct evidence" and "inference" in the terms of ORS 41.070 and 41.320 and stating the required basis for an inference in the terms of ORS 41.330.

Had the plaintiff also requested an instruction defining "indirect evidence" in the terms of ORS 41.080 and 41.310, we believe that these requested instructions would have been appropriate under the facts of this case and that they should be given on retrial of the case. By so holding, however, we do not mean to say that the failure to give such instructions would or would not be reversible error in this case.

Plaintiff also assigns as error the failure of the court to give a requested instruction which would have informed the jury that its findings could not be based on evidence which is opposed to "established physical facts" (Uniform Jury Instruction No. 2.05) and that "in this connection" the jury must take judicial notice of certain "laws of dynamics."

■ We agree that it would have been error to give the "physical facts" instruction under the facts of this case. *Wills v. Petros,* 225 Or 122, 134, 357 P2d 394 (1960). It does not necessarily follow, however, that it would have been error to give some appropriate instruction on "the laws of nature."

ORS 41.410 (9) provides that courts may take judicial notice of "the laws of nature."

ORS 17.245 provides that:

"* * * Whenever the knowledge of the court is by statute made evidence of a fact, the court is to declare such knowledge to the jury, who are bound to accept it as conclusive."

■■ In some cases, depending upon the facts, it

may be proper for the trial court to give an appropriate instruction on any properly applicable "laws of nature" of which the court can properly take judicial notice. The giving of such an instruction, however, as well as the form of any such instruction, is dependent upon the facts of the particular case. We hold that it was not error to refuse to give such an instruction under the facts of this case.

Plaintiff's final assignment of error is that the trial court erred in failing to give a requested instruction on recklessness and wantonness. We agree with defendants that there was no proper basis for such an instruction under the evidence in this case.

Because of other error, however, as previously discussed, we must reverse the judgment of the trial court and remand this case for a new trial.

Reversed and remanded.

O'CONNELL, C. J., dissenting.

It is understandable that the trial judge in this case expressed himself so forcefully in rejecting the evidence of defendant's prior conviction of driving under the influence of intoxicants, because as the trial judge points out, the conviction of such a crime is not probative of the defendant's credibility and the use of the evidence of the prior conviction, under the facts of this case, could severely prejudice the defendant in the eyes of the jury.

The majority would, I believe, agree that the conviction sought to be shown here would not be relevant on the question of credibility. Nevertheless, the majority feels constrained to construe ORS 45.600 to permit evidence of the conviction of any crime because our previous cases have so construed the statute and

because it provides a "clear and certain rule for the purposes of judicial administration."

The indiscriminate character of this "clear and certain rule" has been criticized.[1] Moreover, the cases which established it[2] lose much of their persuasiveness when it is realized that they rest upon an unsatisfactory analysis of the statute. These cases assert that ORS 45.600 is "declaratory of the common law."[3] But at common law not all convictions were seen as tainting a witness. As McCormick on Evidence, § 43 at p. 84 (2d ed 1972) explains: "At common law the conviction of a person for treason or any felony, or of a misdemeanor involving dishonesty (*crimen falsi*) or the obstruction of justice, rendered the convicted person altogether incompetent as a witness. These were said to be the 'infamous' crimes." The justification for the common law rule was that persons convicted of this class of crimes lacked the basic qualities of character essential to trustworthiness.[4] The basis for the rule, then, was credibility. It is fair to assume that the legislature intended to retain this rationale of credibility when it superseded the incompetency rule by substituting for it the right to attack a witness' credibility by the

---

[1] Hutchens, How the Adoption of the Uniform Rules of Evidence Would Affect the Law of Evidence in Oregon: Rules 17-55, 41 Or L Rev 306, 309 (1962); Lacy, Oregon Evidence Law in the Sixties: Problems, Patterns, and Projections, 49 Or L Rev 188, 197 (1970).

[2] State v. Rush, 248 Or 568, 436 P2d 266 (1968); State v. Rollo, 221 Or 428, 351 P2d 422 (1960); State v. Wilson, 182 Or 681, 189 P2d 403 (1945); State v. Jordan, 146 Or 504, 26 P2d 558, 30 P2d 751 (1934).

[3] State v. Hunsaker, 16 Or 497, 19 P 605 (1888); State v. Motley, 127 Or 415, 272 P 561 (1928); State v. Ede, 167 Or 640, 117 P2d 235 (1941).

[4] I Greenleaf on Evidence § 327, 513-15 (Wigmore ed 1899); 2 Wigmore on Evidence §§ 519-520 at 608-613 (3d ed 1940).

use of prior convictions.⑨ And it would also seem fair to assume that the legislature recognized the significance of, and intended to retain for the purpose of impeachment, the common law distinction between convictions which affect credibility and convictions which do not. But our previous cases, without any analysis of the statutes or the historical background out of which they arose, applied ORS 45.600 to all crimes, adding without explanation the statement that the statute is "declaratory of the common law." This statement does not explain the result, for as we noted with respect to ORS 41.900 (8) in *Rogers v. Donovan,* decided this day:

"\* \* \* [T]he statute in question has been held to be declaratory of the common law. That being the case, the statute is not the exclusive authority, because as McCormick says: '\* \* \* [W]hen the common law imposes a restriction not mentioned in the statute, the restriction has been said to govern, unless the circumstances show a legislative intention to abrogate it.' " (footnotes omitted) 268 Or 24, 518 P2d 1306.

Thus, the decisions relied on by the majority are not the kind of precedent that should have any weight in the construction of a statute.

⑨ ORS 44.020 provides, in relevant part: "\* \* \* [N]either parties nor other persons who have an interest in the event of an action, suit or proceeding are excluded; nor those convicted of crime \* \* \* although in every case \* \* \* the credibility of the witness may be drawn in question, as provided in ORS 44.370."

ORS 44.370, *inter alia,* permits a party to overcome the presumption that an adverse witness is speaking the truth by producing "evidence affecting his character or motives."

This section, like ORS 44.020, has been held to be "declaratory of the common law." State v. Motley, 127 Or 415, 419, 272 P 561 (1928). It follows that under ORS 44.370 only convictions which at common law would have been held to "affect character" should be admissible. As noted in the text, these were only the so-called infamous crimes, not every conviction.

Courts in other jurisdictions have construed similar statutes to exclude evidence of prior convictions unless the offense was one involving "moral turpitude, thus fitting the statute generally into the framework of the common law."[⊚] As McCormick has observed and as the majority opinion reiterates, this construction results in impairing the efficient administration of justice because of the uncertainty of the meaning of "moral turpitude." But, although the construction adopted by the majority facilitates the *efficient* administration of justice, it creates a more serious danger in my opinion—the danger of denying a party the *fair* administration of justice. It was this latter danger which prompted the trial judge in the present case to exclude the evidence of the prior conviction.

Turning to the precise basis of the decision below, I believe the trial judge acted properly in excluding

---

[⊚] *See e.g.*, State v. Van Allen, 140 Conn 39, 97 A2d 890 (1953); Asata v. Furtado, 52 Hawaii 284, 474 P2d 288 (1970); Werdell v. Turzynski, 128 Ill App2d 139, 262 NE2d 833 (1970); State v. Millings, 247 S C 52, 145 SE2d 422 (1965); State v. Olson, 83 S D 260, 158 NW2d 526 (1968). *See also* Reed v. State, 43 Ala App 419, 191 So2d 258 (1966).

*Contra:* In re Searchill's Estate, 9 Mich App 614, 157 NW2d 788 (1968); Ward v. State, 27 Okla Cr 362, 228 P 498 (1928); State v. Gandee, 73 Wash2d 978, 439 P2d 400 (1968).

In addition, at least two courts faced with precedents similar to our own have expressed dissatisfaction with this construction. State v. Burke, 33 Wis2d 151, 146 NW2d 809 (1966); Campbell v. U.S., 176 F2d 45 (D.C. Cir 1949). Georgia, under a statute comparable to ORS 44.370, has limited the kinds of convictions available to impeach to crimes involving moral turpitude. Shaw v. State, 102 Ga 660, 29 SE 477 (1897).

*See also* McCormick on Evidence § 43 at 85-86 (2d ed 1972).

Finally, it is noted that the following twenty states by statute explicitly restrict convictions usable to impeach to felonies, crimes involving moral turpitude, or infamous crimes: California, Colorado, Delaware, Idaho, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Nebraska, Nevada, New Hampshire, New Mexico, Tennessee, Texas, Vermont, Virginia, and West Virginia.

evidence of this conviction. We will never know what the verdict would have been if the evidence had been admitted in this case. Inasmuch as defendant was not driving perhaps the jury would not have been strongly influenced by the prior conviction. But in cases where defendant is the driver, there is a real danger that the jury will reason that because a defendant had been driving under the influence of intoxicants on a previous occasion, he was driving under the influence in the case before it or, in any event, because he had violated the law and therefore had been a bad man on a previous occasion, he likewise was a bad man at the time of the incident out of which the case at hand arose. There is here the danger which we have noted in the criminal cases in which evidence of other criminal conduct on the part of the defendant is sought to be adduced. In these cases we have held that evidence of other criminal conduct is admissible only if the probative value of the evidence outweighs its prejudicial effect.[7] A comparable standard, recognizing authority in the court to balance competing interests has been applied to evidence of past criminal conduct used solely for the purposes of impeachment.[8]

If the same reasoning were used in cases such as the one at bar, the admissibility of prior convictions would be determined by balancing prejudice against probative value. There is precedent in Oregon in sup-

---

[7] State v. Freeman, 232 Or 267, 374 P2d 453 (1962); State v. McDonald, 231 Or 24, 361 P2d 1001, *cert. den.*, 370 US 903, 82 S Ct 1247, 8 L Ed2d 399 (1962); State v. Long, 195 Or 81, 244 P2d 1033 (1952). These cases, however, do not involve evidence of prior convictions.

[8] State v. Bacon, 13 Or 143, 9 P 393 (1886); State v. Chee Gong, 17 Or 635, 21 P 882 (1888); State v. Wakefield, 111 Or 615, 228 P 115 (1924). See also State v. Bilyeu, 64 Or 177, 129 P 768 (1913). Again, the conduct involved had not been the subject of a previous prosecution.

port of such a rule.[9] Although this rule of admissibility could be even more uncertain than one resting upon whether a particular crime involves moral turpitude, it is in my opinion preferable to the rule embraced by the majority, which elevates certainty and efficiency of judicial administration above fundamental fairness in the administration of justice. This view has recently been accepted by a substantial number of courts.[10]

Our disagreement on the proper interpretation of ORS 45.600 suggests that there is the need for its revision. The proposal of Rule 21 of the Uniform Rules of Evidence provides a good solution: "Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility * * *." Uniform Rules of Evidence, Rule 21, 9A ULA 607 (1965).

---

[9] Redsecker v. Wade, 69 Or 153, 162, 134 P 5, 138 P 485, Ann Cas 1916A 269 (1914).

[10] Discussion of this problem has most often been in the context of criminal prosecutions. Luck v. United States, 348 F2d 763 (D.C. Cir 1965); Brown v. United States, 370 F2d 242 (D.C. Cir 1966); Gordon v. United States, 383 F2d 936 (D.C. Cir), cert. den., 390 US 1029 (1967); State v. Marquez, 160 Conn 46, 273 A2d 689 (1970); Spaulding v. State, 481 P2d 389 (Alaska 1971); Bogie v. Commonwealth, 467 SW2d 707 (Ken 1971); People v. Montgomery, 47 Ill2d 510, 268 NE2d 695 (1971); People v. Farrar, 36 Mich App 284, 193 NW2d 363 (1972); People v. Beagle, 99 Cal Rptr 313, 492 P2d 1 (1971); State v. Santiago, 53 Hawaii 254, 492 P2d 657 (1971); State v. Driscoll, 43 Wis2d 851, 193 NW2d 851 (1972); McDonald v. State, 489 P2d 776 (Okla 1971); Note, Other Crimes Evidence at Trial: Of Balancing and Other Matters, 70 Yale L J 763 (1961).

Contra: State v. Hawthorne, 49 NJ 130, 228 A2d 682 (1967); State v. Morris, 460 SW2d 624 (Mo 1970); Commonwealth v. West, 357 Mass 245, 258 NE2d 22 (1970); State v. West, 285 Minn 188, 173 NW2d 468 (1969) (expressing disfavor, but feeling compelled to defer to legislature). But the same analysis applies in assessing the fairness of attacking any witness. Pedorella v. Hoffman, 91 RI 487, 165 A2d 721 (1960); M. Ladd, Credibility Tests—Current Trends, 89 U Pa L Rev 166 (1940).

DENECKE, J., specially concurring in O'CONNELL, C. J.'s dissent.

I do not read our past decisions as uniformly holding that a witness may be impeached by evidence of the past conviction of any crime, regardless of its bearing on the witness's credibility. *Redsecker v. Wade*, 69 Or 153, 134 P 5, 138 P 485, 16A Ann Cas 269 (1914), is to the contrary and *State v. Bacon*, 13 Or 143, 9 P 393, 57 Am R 8 (1886), appears to be to the contrary.

"* * * Counsel for the plaintiff was permitted by the trial court to ask her many questions as to what name she had borne, what she had done, and as to whether she had been convicted of a crime, etc. In the exercise of a sound discretion, the trial court could lawfully allow this, for the purpose of discrediting the witness.

"In *State v. Bacon*, 13 Or. 144 (9 Pac. 57 Am. St. Rep. 8), the syllabus of the case is:

" 'Subject to the sound discretion of the court, a witness may be compelled to answer any question which tends to test his credibility, or to shake his credit by injuring his character, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself; except only that he may claim his privilege and refuse to answer a question which tends to expose him to a criminal charge.'

"* * * * * *

"Such evidence is admissible only to impair the credibility of the witness testifying, and the trial court, in the exercise of a sound discretion, may either receive or reject it without error." *Redsecker v. Wade*, supra (69 Or at 161-162).