Argued and submitted September 18, 2020; decision of Court of Appeals and judgment of circuit court affirmed March 4, 2021

STATE OF OREGON,
*Respondent on Review,*

*v.*

FRANK MARVIN PHILLIPS, JR.,
*Petitioner on Review.*

(CC 16CR66428) (CA A165985) (SC S067088)

482 P3d 52

In defendant's trial for assault and strangulation, the trial court allowed the state to impeach defendant's testimony with evidence that defendant had previously been convicted of second-degree assault, under OEC 609. The rule permits a witness's credibility to be impeached with evidence of prior convictions unless "[a] period of more than 15 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction," whichever is later. Although defendant was originally convicted of the second-degree assault crime in 1994, that original conviction was later vacated, and the case was remanded for a new trial. On retrial, defendant was again convicted of the crime in 2008, and the trial court reasoned that the retrial provided the operative "date of the conviction" for purposes of the 15-year window of admissibility. Defendant was convicted, and the Court of Appeals affirmed. *Held*: "[T]he date of the conviction" in OEC 609(3)(a) refers to the date of a valid conviction that a party proposes to offer as impeachment and does not relate back to an earlier date of a vacated conviction for the same crime.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

En Banc

On review from the Court of Appeals.*

Zachary L. Mazer, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for petitioner on review. Also on the brief were Ernest G. Lannet, Chief Defender, and Laura E. Coffin, Deputy Public Defender.

Leigh A. Salmon, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* Appeal from Marion County Circuit Court. Mary Mertens James, Judge. 298 Or App 743, 450 P3d 54 (2019).

FLYNN, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**FLYNN, J.**

We allowed review in this criminal case to con-
sider whether the trial court correctly allowed the state to
impeach defendant's testimony with evidence that defen-
dant previously had been convicted of second-degree assault.
The trial court admitted the prior-conviction evidence
under OEC 609, which permits a witness's credibility to be
attacked with evidence that the witness has previously been
convicted of certain crimes, unless "[a] period of more than
15 years has elapsed since the date of the conviction or of
the release of the witness from the confinement imposed for
that conviction," whichever is later. At issue is how the legis-
lature intended "the date of the conviction" to be determined
when the witness has been convicted twice for the same
crime—here because defendant was originally convicted for
the second-degree assault in 1994, successfully petitioned
for post-conviction relief, and was then convicted again on
retrial in 2008. The Court of Appeals concluded that the
date of defendant's conviction on retrial supplies "the date
of the conviction" for purposes of OEC 609's 15-year window
of admissibility and, accordingly, that the trial court cor-
rectly allowed evidence of that conviction to impeach defen-
dant's testimony. We agree with the conclusion of the Court
of Appeals and affirm.

## I.  BACKGROUND

The relevant facts are procedural and primar-
ily focus on the history of defendant's prior second-degree
assault conviction. Defendant was originally convicted of
that crime in 1994, as well as other, more serious crimes
arising out of an incident in 1993, and he began serving
a lengthy prison sentence. In 2007, while still serving his
prison sentence for the 1994 convictions, defendant success-
fully challenged those convictions through a petition for
post-conviction relief. The post-conviction court vacated all
of defendant's 1994 convictions and remanded the case for
a new trial, at which point the Department of Corrections
released him from confinement. On retrial, in 2008, defen-
dant again was convicted of second-degree assault, for
which he was sentenced to a period of 36 months' incarcer-
ation. But defendant was acquitted on retrial of the more

serious charges that had been the basis for his lengthy original prison sentence. As a result, the judgment of conviction following retrial specified that defendant's 36-month sentence for the second-degree assault "is served," and the Department of Corrections issued a certificate specifying that defendant had an "Adjusted Calculated Release Date" of May 1996.

In the present case, defendant was charged with assault and strangulation arising out of an altercation with a neighbor. At the start of defendant's trial, he advised the court that he planned to testify, and he urged the court to rule that evidence of his prior second-degree assault conviction would not be admissible under OEC 609. Defendant argued that the operative date of his prior conviction was 1994—when he was first convicted of second-degree assault—and that the operative date of his release from confinement for that conviction was 1996—as recalculated by the Department of Corrections—meaning that the conviction should be excluded because both dates fell outside of the OEC 609(3)(a) window of admissibility. The trial court disagreed and ruled that the state could offer evidence of the conviction as impeachment.

At trial, defendant testified in his own defense and acknowledged that he had been previously convicted of assault. He also explained to the jury that the conviction was for a crime that he committed in 1993. The jury found defendant guilty of the charged offenses, and defendant appealed.

In the Court of Appeals, defendant repeated his argument that "the date of the conviction" for his prior second-degree assault was 1994 and that his date of release from confinement for that conviction was the "Adjusted Calculated Release Date" of May 1996, making the conviction inadmissible under OEC 609(3)(a). The Court of Appeals disagreed. *State v. Phillips*, 298 Or App 743, 746, 450 P3d 54 (2019). Relying on "[t]he plain text of OEC 609," the court concluded that the "qualifying conviction" for purposes of OEC 609 was defendant's 2008 retrial conviction and, thus, that the trial court correctly refused to exclude evidence of

defendant's prior conviction.[1] *Id.* This court allowed defendant's petition for review, and we conclude that the lower courts correctly looked to the date of defendant's retrial conviction to determine "the date of the conviction" for purposes of OEC 609(3)(a)

## II.   DISCUSSION

The debate over how to apply the limit of OEC 609(3)(a) when there have been two convictions for the same crime presents a question of statutory construction, which we resolve by applying the analytical framework described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Under that framework, our "paramount goal" is to discern the intent of the legislature. *Id.* at 171. We primarily consider the text and context of a statute because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes," but we also consider legislative history "where that legislative history appears useful to the court's analysis." *Id.* at 171-72 (internal quotation marks omitted).

### A.   *Text and Context*

The pertinent text of OEC 609 begins with the general rule that some evidence of prior criminal convictions may be used to impeach a witness. The rule specifies:

"For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, but only if the crime:

"(a)   Was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted; or

"(b)   Involved false statement or dishonesty."

---

[1] Although we refer to defendant's "2008 retrial conviction," the parties agree, and the court record reflects, that the judgment of conviction memorializing the 2008 guilty verdict was not entered until 2011. We have not previously considered whether a delay of that type affects the operative "date of the conviction," and we do not address that question here because both dates fall within the 15-year window.

OEC 609(1).[2] A version of that general rule has been codified in Oregon law since at least 1863. General Laws of Oregon, An Act to Provide a Code of Civil Procedure, ch VIII, title VIII, § 830, p 203 (1863). That statute remained essentially unchanged until the 1981 legislature enacted OEC 609 as part of the new Oregon Evidence Code.[3] *See former* ORS 45.600, *repealed by* Or Laws 1981, ch 892, § 98; Or Laws 1981, ch 892, § 53.

There is no dispute that the scope of the general rule reaches defendant's prior conviction. Second-degree assault is the type of crime that generally may be admitted for impeachment under OEC 609(1)(a) because it "is a Class B felony," ORS 163.175(2), for which defendant could be— and was—sentenced to imprisonment in excess of one year. *See* ORS 161.605 (for Class B felony, "maximum term of an indeterminate sentence of imprisonment" is 10 years).[4]

---

[2] Other provisions of OEC 609 provide further detail on the admissibility of prior convictions, including permitting an explanation and rebuttal regarding the circumstances of conviction, OEC 609(4); providing that a conviction is admissible while an appeal is pending, OEC 609(5); and providing for admission of certain convictions to impeach a defendant's testimony in a domestic violence case, OEC 609(2).

[3] OEC 609 (1981) provided, in relevant part:

"(1) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime in other than a justice's court or a municipal court shall be admitted if elicited from the witness or established by public record, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (b) involved false statement."

[4] OEC 609(1)(a) does not use the term "felony" or "misdemeanor"; it instead distinguishes between crimes "punishable by death or imprisonment in excess of one year under the laws under which the witness was convicted" and other crimes. In Oregon, however, a crime that is punishable by a term of imprisonment in excess of one year is, by definition, a "felony." ORS 161.525. In this opinion, we use the term "felony" as shorthand for the crimes covered by OEC 609(1)(a), as we have in past opinions. *See, e.g.*, *State v. McClure*, 298 Or 336, 353, 692 P2d 579 (1984) ("We assume, as did the Joint Interim Committee on the Judiciary, that the fact that a witness has been convicted of *any* felony within the prescribed time limits has some relevancy to credibility ***." (Emphasis in original.)); *see also* Report of the Legislative Interim Committee on the Judiciary, Proposed Oregon Evidence Code 125 (Dec 1980) (within the Advisory Committee Commentary to its proposal for Rule 609, using term "felony" to refer to the category of convictions that are described in OEC 609(1)(a)). But we caution that, as applied to crimes committed in other states, the category "may include criminal convictions that are not felonies." Laird C. Kirkpatrick, *Oregon Evidence* § 609.04 at 546 (7th ed 2020).

The dispute in this case focuses on two exceptions to the general rule, which the legislature added when it enacted OEC 609. Or Laws 1981, ch 892, § 53. Following one change by the voters in 1986, the pertinent exceptions currently specify that evidence of a conviction is not admissible under OEC 609 if:

"(a)   A period of more than 15 years has elapsed since the date of *the conviction* or of the release of the witness from the confinement imposed for *that conviction*, whichever is the later date; or

"(b)   *The conviction* has been expunged by pardon, reversed, set aside or otherwise rendered nugatory."

OEC 609(3) (emphases added).[5]

According to the state, the emphasized text of OEC 609 illustrates the legislature's intention that, for any crime, there would be a single potentially admissible conviction to which the rule's requirements for admissibility would be applied.[6] Because defendant's original conviction has been vacated, the state argues, OEC 609(3)(b) makes "the conviction" following retrial in 2008 the only potentially admissible conviction. And because the date of the retrial conviction falls within the 15-year window of OEC 609(3)(a), the state concludes, the trial court properly admitted evidence of that prior assault conviction as impeachment.[7]

Defendant does not necessarily disagree with the state's contention that OEC 609 contemplates that there will be a single conviction for each crime, but he proposes

---

[5] Also excluded from admissibility are adjudications of a juvenile court that a child is within its jurisdiction, OEC 609(6), and a conviction for "any of the statutory counterparts of offenses designated as violations as described in ORS 153.008," OEC 609(7).

[6] As discussed below, a voter-adopted amendment in 1986 extended the window of admissibility from 10 to 15 years but did not otherwise change the provision. Or Laws 1987, ch 2, § 9. Because the length of the time limit has no bearing on how that limit is applied to defendant's convictions, the unchanged, original text is the focus of our inquiry, and it is therefore the intent of the 1981 legislature that we seek to discern.

[7] The state also argues in the alternative that, if the operative conviction for defendant's prior assault is the original 1994 conviction, then the date of defendant's release from "the confinement imposed for that conviction" should be 2007, because that is when defendant was actually released from confinement for his 1994 convictions. We do not reach the state's alternative argument.

that "the conviction" for a crime takes into account the entire procedural history of prosecutions for a given crime—essentially a holistic view of "the conviction." According to defendant, his 1994 assault conviction was only temporarily vacated and was then "reinstated" as a result of the retrial. As a result, he contends, "the date of the conviction" relates back to 1994. In addition, defendant asserts that his period of confinement was "ultimately deemed legally served" as of 1996, relying on the judgment of conviction following retrial. Because even the later of those dates passed more than 20 years before the date of trial in the present matter, defendant concludes that his conviction is inadmissible under OEC 609(3)(a). He points to evidence that the legislature was motivated by considerations of "fairness and relevancy" to adopt the exclusion for older convictions. *See* Legislative Commentary to OEC 609, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 609.02 at 539 (7th ed 2020). He contends that the legislature's rationale is inconsistent with a rule that extends the impeachment window for a prior crime simply because a defendant has successfully challenged an original conviction for the crime. Defendant raises important policy considerations, but the text of OEC 609 favors the state's interpretation.

1. *Whether there is textual support for defendant's argument*

The text does not readily lend itself to defendant's proposal that the age of an offered conviction depends on when the witness was first convicted of the crime, because defendant's proposal reads an extra word and an extra step into the test set out in OEC 609(3). One of our guiding rules for construing statutes is that "the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." ORS 174.010. Yet that is what defendant's proposal asks us to do.

The text of OEC 609(3)(a) suggests that the legislature intended the exception to function as a two-part inquiry that would be carried out from the vantage point of the trial in which an otherwise-admissible conviction is offered as impeachment. The first step is to determine "the date of the

conviction" and the date of "release of the witness from the confinement imposed for that conviction." The second step is to ask whether "[a] period of more than 15 years has elapsed since" the later of those two dates. OEC 609(3)(a).[8] If the answer to that second question is "no," then the conviction falls within the statutory window of admissibility.

Defendant's proposal, however, requires us to insert the word "original" into the phrase "the date of the conviction." It also requires us to add at least one more step to the inquiry that the text describes: Ask whether the offered conviction arises out of the retrial of an earlier conviction for the same crime. If the answer to that question is "yes," then the date of the *original* conviction and any recalculated date of release from confinement must be determined before asking whether "[a] period of more than 15 years has elapsed since" the later of those two dates. And if the answer to that question is "yes," then neither evidence of the original conviction nor evidence of the retrial conviction may be admitted to impeach the witness. That need to insert words that are not currently set out in the text of OEC 609(3)(a) to accommodate defendant's proposed construction presents an obstacle to accepting defendant's proposed construction. *See* ORS 174.010.

2.  *Whether there is textual support for the state's argument*

The text of the rule more readily lends itself to the state's proposed construction. The state's argument begins with the premise that the various uses of "conviction" in OEC 609(3)(a) suggest a legislative intention that, for any qualifying crime, there will be a single potentially admissible conviction to which a court looks to determine whether the witness's conviction for the crime is too old to be admitted. The state points out that the rule makes evidence of "*a* conviction" inadmissible if more than 15 years have elapsed since the date of "*the* conviction" or the date of release "from the confinement imposed for *that* conviction," whichever is

---

[8] It is not our intention to specify a particular analytical path for trial judges to follow. If fewer than 15 years have elapsed since the date of the conviction, then there would be no need for the trial court to determine the date of release from confinement, and vice versa.

later. OEC 609(3)(a) (emphases added). According to the state, the emphasized words grammatically signal the legislature's intention that, for any crime of which a party seeks to offer evidence, there would be a single operative conviction from which a court would determine both "the date of the conviction" and the date of release from confinement for "that conviction." We agree with the state that the legislature appears to have contemplated that there would be a single admissible conviction for any crime. *See State v. Lykins*, 357 Or 145, 159, 348 P3d 231 (2015) (explaining that, in general, "[a]s a grammatical matter, the definite article, 'the,' indicates something specific, either known to the reader or listener or uniquely specified"); *Webster's Third New Int'l Dictionary* 2367 (unabridged ed 2002) (defining "that" to mean "the person, thing, or idea pointed to, mentioned, or understood from the situation **:** the one indicated").

The state's second premise is that defendant's original, 1994 conviction cannot be "the conviction" against which the 15-year window is measured because the 1994 conviction became inadmissible when it was "vacated" through post-conviction relief. Defendant insists that the state is mistaken about the effect of the post-conviction judgment on his 1994 conviction. He disputes that the post-conviction judgment "vacat[ing]" his 1994 convictions had the effect of making those convictions inadmissible under OEC 609(3)(b). Defendant reasons that "vacating" is not encompassed by the actions listed in OEC 609(3)(b), which excludes evidence of a conviction that "has been expunged by pardon, reversed, set aside or otherwise rendered nugatory."

We agree with the state, however, that a "vacated" conviction falls within the intended scope of OEC 609(b). We conclude that the legislature intended the more general category "otherwise rendered nugatory" to serve as a catch-all category that is broad enough to include convictions that have become unenforceable through a process that results in a "vacated" conviction. As an initial matter, that scope is consistent with the ordinary meaning of the term "nugatory." *See Webster's* at 1548 (defining "nugatory" as "having little or no consequence **:** WORTHLESS" and "having no force **:** INVALID"); *see also State ex rel Rosenblum v. Nisley*, 367 Or 78, 88, 473 P3d 46 (2020) (explaining that, when a statute

includes a term of common usage that is not specially defined for purposes of the statute, we generally "assume that the legislature intended to use the term in a manner consistent with its plain, natural, and ordinary meaning").

Moreover, because "otherwise rendered nugatory" is a general category that the legislature has linked to a list of specific examples, the specific examples help us understand what the legislature intended "otherwise rendered nugatory" to encompass. *See Nisley*, 367 Or at 90 (explaining that under the interpretive principle of *ejusdem generis*, when a statute includes a list ending in a catch-all provision, the catch-all provision is understood to encompass items of the same kind as those listed); *see also Schmidt v. Mt. Angel Abbey*, 347 Or 389, 402, 223 P3d 399 (2009) (describing the principle as useful to discern what the legislature intended by a general term for which it provided specific examples). Under that interpretive principle, "the court seeks to find, if it can, a *common* characteristic among the listed examples." *Schmidt*, 347 Or at 405 (emphasis in original). Here, a common characteristic of the specific actions that will render a conviction inadmissible—"expunged by pardon, reversed, set aside"—is that they render the prior conviction no longer enforceable and no longer a valid conviction. The act of "vacating" defendant's 1994 convictions on post-conviction had the same effect. *See Black's Law Dictionary* 1388 (5th ed 1979) (defining "vacate" as "[t]o annul; to set aside; to cancel or rescind. To render an act void; as, to vacate an entry of record, or a judgment").

The text thus supports the state's first premise—that, for any crime, the legislature contemplated that there would be a single potentially admissible conviction that provides the dates to which the 15-year window of OEC 609(3)(a) is applied. The text also supports the state's second premise—that defendant's original conviction cannot be "the conviction" that is admissible because evidence of a "vacated" conviction is inadmissible.

Defendant argues, however, that those premises do not lead necessarily to the state's conclusion that the retrial conviction determines "the date of the conviction." He emphasizes that OEC 609(3)(a) does not specify how

the age of "the conviction" for a crime is to be determined when the witness has been convicted both originally and on retrial for the same crime, and he proposes to fill that gap with legislative history. According to defendant, the legislative history suggests that the legislature intended a retrial conviction to be understood as simply a continuation—and reinstatement—of the original conviction for the crime, and thus that the original conviction would determine the date of "the conviction."

B.   *Legislative History*

Defendant contends that his proposal most closely aligns with the legislature's rationale for allowing impeachment by evidence of a prior conviction but excluding evidence of older convictions. According to defendant, OEC 609 reflects the legislature's determination that the probative value of a conviction derives from the criminal conduct that it represents and that the probative value diminishes with time. He cites legislative commentary stating that the 1981 legislature adopted the limited window of admissibility to accommodate concerns about "'fairness and relevancy.'" *See* Legislative Commentary to OEC 609, *reprinted in* Kirkpatrick, *Oregon Evidence* § 609.02 at 539. He contends that the legislature's purpose is undermined by the rule announced by the Court of Appeals because the rule treats an old conviction as more probative simply because the defendant was able to identify an error that was significant enough to require a retrial. We agree with defendant's description of the legislature's rationale for enacting a limit on admissibility, but that rationale does not persuade us that the legislature intended to adopt defendant's proposal for calculating the date of a conviction when there has been a retrial.

To better understand the intention of the 1981 legislature, it is helpful to understand the substantial history out of which OEC 609 evolved. The practice of impeaching a witness with evidence of prior convictions traces its origin to the common-law tradition that disqualified any person convicted of an "infamous" crime—a category that generally included treason, felonies, and crimes of dishonesty and false statement—from testifying as a witness in any case.

Francis Wharton, 1 *A Commentary on the Law of Evidence in Civil Issues* § 397, 350 (3d ed 1888). That disqualification came to be "rationalized on the basis that such a person was unworthy of belief." Jack B. Weinstein & Margaret A. Berger, 1 *Weinstein's Evidence* ¶ 609[02], p 609-58 (1988), *quoted in Green v. Bock Laundry Mach. Co.*, 490 US 504, 511, 109 S Ct 1981, 104 L Ed 2d 557 (1989).

By the time that Oregon adopted its first statute addressing the issue, American courts had shifted away from the practice of disqualifying convicted witnesses to the practice of permitting the impeachment of the witness's testimony with evidence of convictions, but the rationale for impeachment remained the same as the rationale for disqualification: A person who was willing to break the law would also be willing to lie on the stand. Wharton, 1 *A Commentary on the Law of Evidence in Civil Issues* § 397 at 350, § 567 at 552; *see Gertz v. Fitchburg R. Co.*, 137 Mass 77, 78 (1884) (Justice Holmes, writing for the court, explaining that "when it is proved that a witness has been convicted of a crime, the only ground for disbelieving him which such proof affords is the general readiness to do evil which the conviction may be supposed to show").

Oregon followed this shift from disqualification to impeachment when it first codified the common-law rule. As explained above, that codification dates back at least to 1863. *See* General Laws of Oregon, An Act to Provide a Code of Civil Procedure, ch VIII, title VIII, § 830, p 203 (1863) (later codified at *former* ORS 45.600) (specifying that a witness may not be impeached "by evidence of particular wrongful acts; except that it may be shewn by examination of the witness, or record of the judgment, that he has been convicted of a crime"); *id.* ch VIII, title III, § 700, pp 174-75 (later codified at *former* ORS 44.020, *repealed by* Or Laws 1981, ch 892, § 98) (specifying that "those who have been convicted of a crime" are qualified to be witnesses). Through those provisions, the legislature rejected the view that persons convicted of a crime are incompetent to testify and, instead, adopted a rule that a conviction for "any crime" at any time in a witness's past was admissible to impeach the witness. *See Marshall v. Martinson*, 268 Or 46, 50-51, 518 P2d 1312 (1974) (explaining scope of *former* ORS 45.600). In doing so, the legislature

"apparently adopted the view, as a matter of public policy, that a jury may properly find that a person who has been convicted of any crime may be less reliable as a witness than a person who has never been convicted of any crime." *Id.* at 51. Despite some criticism that the rule was poorly aligned with its rationale, the broad permission to impeach a witness with evidence of a conviction for "any crime" from any time in a witness's past remained the law in Oregon in essentially the same form until it was repealed in 1981 and replaced by OEC 609. *See id.* at 50 (observing that, "'[w]hatever the logic may be of arguing that no evidence should be received concerning conviction of a crime which would not by its nature be thought of as a basis for questioning credibility, the rule is nonetheless clearly established'" (quoting *State v. Rush*, 248 Or 568, 571, 436 P2d 266 (1968))).

As the text of OEC 609 reflects, the legislature adhered to the longstanding rule that evidence of criminal conduct is relevant "[f]or the purpose of attacking the credibility of a witness." OEC 609(1). In adopting OEC 609, however, the legislature identified a narrower range of admissible convictions to reflect its assessment that "[n]ot all crimes are equally relevant to" the purpose of showing "that the person cannot be believed." Legislative Commentary to OEC 609, *reprinted in* Kirkpatrick, *Oregon Evidence* § 609.02 at 533.[9] One change that the legislature made was to abandon the prior authorization of impeachment with evidence of "any crime" in favor of a rule that allowed evidence of a prior conviction for a misdemeanor only if the misdemeanor "involved false statement," while still allowing evidence of any prior felony. OEC 609(1)(a)-(b) (1981); Legislative Commentary to OEC 609, *reprinted in* Kirkpatrick, *Oregon Evidence* § 609.02 at 534.

---

[9] This court considers the legislative commentary to the Oregon Evidence Code to be part of the Code's legislative history. *Dept. of Human Services v. G. D. W.*, 353 Or 25, 35 & n 10, 292 P3d 548 (2012). At the time the Code was adopted, "legal counsel for the House Committee on the Judiciary and for the Senate Justice Committee prepared a commentary that, although not adopted by the assembly, was denominated by the chairpersons of the respective committees as the 'official commentary' as filed with the Secretary of State." *State v. Jancsek*, 302 Or 270, 280-81, 730 P2d 14 (1986). We have emphasized that "the commentary is not controlling upon this or any other court" but nevertheless "provides highly useful background regarding each rule and guidance to courts and attorneys in interpreting these rules." *McClure*, 298 Or at 344.

Another change was the legislature's addition of the exception at issue here, which recognizes that a record of criminal convictions becomes less probative of a witness's credibility as time passes. *See* OEC 609(2)(a) (1981). In contrast to the prior rule that admitted convictions from any time in a witness's past for purposes of impeachment, the rule adopted in 1981 made convictions inadmissible if "[a] period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." OEC 609(2)(a) (1981); *cf. former* ORS 45.600.

Although the legislative history does not directly address the question before us, it sheds light on the legislature's rationale for excluding evidence of older convictions. As the accompanying legislative commentary explains, "The Legislative Assembly believes that considerations of fairness and relevancy demand that some time limit be recognized." Legislative Commentary to OEC 609, *reprinted in* Kirkpatrick, *Oregon Evidence* § 609.02 at 539. The legislature also had before it the commentary of the Advisory Committee on Evidence Law Revision, which spent seven years drafting the proposed evidence code for the legislature. *State v. McClure*, 298 Or 336, 346-47, 692 P2d 579 (1984) (describing role of Advisory Committee). The Advisory Committee explained that the proposed limit on admitting older convictions reflected the view that the "probative value of the conviction with respect to the person's credibility diminished" over time "to a point where it should no longer be admissible." Report of the Legislative Interim Committee on the Judiciary, Proposed Oregon Evidence Code 126 (Dec 1980) (providing the Advisory Committee Commentary to the Advisory Committee Proposal for Rule 609).[10]

Defendant points to that history to support his argument that the legislature intended the age of any conviction on retrial to be determined by the date of the witness's original conviction for the crime, for purposes of applying OEC 609(3)(a). Defendant may be correct that his proposal more

---

[10] As mentioned above, the window of admissibility was initially set at 10 years, but the voters with Ballot Measure 10 expanded the window to 15 years. Or Laws 1987, ch 2, § 9; *compare* OEC 609(3)(a), *with* OEC 609(2)(a) (1981).

closely aligns with the legislature's rationale for excluding older convictions, but the legislative history reflects that the legislature was not solely concerned with how closely the rule that it adopted would align with the theoretical underpinnings for the rule. Rather, that history suggests that the legislature was simultaneously concerned with creating a practical rule that would be easy for trial courts to apply. The legislature's balancing of those competing rationales is reflected in several choices that the legislature made in adopting OEC 609.

The first such balancing is reflected in the rule's requirement that only evidence that "the witness has been *convicted* of a crime shall be admitted." OEC 609(1) (emphasis added). The legislature's rationale for admitting evidence of a prior crime is that the criminal conduct is probative of credibility. *See State v. Smith*, 298 Or 173, 182, 691 P2d 89 (1984) (explaining that "[t]he value judgment by the legislature [expressed in OEC 609] was that one who has committed certain forbidden acts may not be as worthy of belief as one who abides by the laws"); *McClure*, 298 Or at 347 ("'[a] felony conviction may be used to impeach credibility because the magnitude of the violation of societal standards indicated by the conviction makes it relevant to the credibility of the witness as a testifier'" (quoting Report of the Legislative Interim Committee on the Judiciary, Proposed Oregon Evidence Code at 125 (providing Advisory Committee Commentary))). As commentators have long observed, that underlying rationale is not closely aligned with the rule's requirement that there must be a conviction, because requiring a conviction keeps out evidence "that the witness has in fact committed a crime, if he has not been convicted, although the actual perpetration of the crime is what renders him unworthy of belief." John Henry Wigmore, 2 *A Treatise on the Anglo-American System of Evidence in Trials at Common Law including the Statutes and Judicial Decisions of All Jurisdictions of the United States and Canada* § 980, 361-62 (2d ed 1923) (internal quotation marks omitted).

Yet admitting only evidence of a conviction has the practical advantage of simplifying the task for the trial court. *See id*. (quoting observation of an 1857 New York opinion that

producing a record of conviction "raises no collateral issue of fact, as the record is conclusive" but that impeachment through evidence of "the actual perpetration of the crime \*\*\*, if permitted, might raise a collateral issue for trial" (internal quotation marks omitted)); *see also* Legislative Commentary to OEC 609, *reprinted in* Kirkpatrick, *Oregon Evidence* § 609.02 at 539 (observing that it is important for courts to be able to rely on the "presumption of correctness [that] attends all judicial proceedings"). The Oregon legislature followed the preference for practicality when it limited impeachment to evidence that a witness "has been convicted of a crime." *See* OEC 609(1). The legislature intended that courts would rely on the "presumption of correctness [that] attends all judicial proceedings"—unless and until that conviction is definitively "rendered nugatory." *See* Legislative Commentary to OEC 609, *reprinted in* Kirkpatrick, *Oregon Evidence* § 609.02 at 539; OEC 609(3)(b), (5).

Another example of the legislature balancing the rule's administrability over its close alignment with the underlying theory of relevance is the legislature's choice to admit evidence of a conviction for *any* felony. In making that choice, the legislature considered competing proposals regarding the types of crimes that should be used to attack a witness's credibility. Report of the Legislative Interim Committee on the Judiciary, Proposed Oregon Evidence Code at 124-25 (providing proposals and commentaries from the Judiciary Committee and Advisory Committee). The Legislative Interim Committee on the Judiciary, which submitted one of the proposals for OEC 609(1), explained that "[a] majority of the committee felt that \*\*\* the mere fact that a crime is designated a felony does not make conviction of that crime necessarily relevant to the credibility of a witness." *Id.* at 124. As a result, that committee proposed "that prior convictions be admitted for purposes of impeaching a witness's credibility only if the conviction was for a crime—felony or misdemeanor—involving dishonesty or false statement." *Id.* This court has described that approach as "[t]he so-called purist or intellectual approach." *McClure*, 298 Or at 346.

Instead, however, the legislature adopted the competing proposal submitted by the Advisory Committee, that a conviction for any crime that is punishable by "imprisonment

in excess of one year" is admissible to impeach—although still limiting admissible misdemeanor convictions to those for crimes that "[i]nvolved false statement." *See McClure*, 298 Or at 346-47 (describing role of Advisory Committee and discussing the competing proposals presented to the legislature). The Legislative Commentary that accompanies the Evidence Code explains that "[t]he Legislative Assembly specifically reject[ed] any further inquiry into the facts behind a judgment to determine its suitability for the purpose of impeachment." Legislative Commentary to OEC 609, *reprinted in* Kirkpatrick, *Oregon Evidence* § 609.02 at 534-35. Thus, a determination of whether a particular crime of conviction is "impeachable" under OEC 609(1)(a) or (b) is based solely on the statutory maximum sentence or on the statutory elements, without regard to the witness's actual conduct. *Id.* The legislative commentary further explains that "[a]lthough analyzing the facts of a prior conviction may well be helpful in some cases, it is very time-consuming and leads to uncertainty." *Id.* at 535.

The legislature chose the practical approach despite awareness that the approach could cause imperfect alignment between the rule's rationale and its application. Indeed, the Legislative Commentary quoted the classic example of a man who so highly prizes his "'reputation of veracity'" that he fights and kills another who has called him a liar: "'[T]he inference of the law is, that he cannot open his mouth but lies will issue from it. Such are the inconsistencies which are unavoidable in the applications of any rule which takes improbity for a ground of exclusion [of the witness].'" Legislative Commentary to OEC 609, *reprinted in* Kirkpatrick, *Oregon Evidence* § 609.02 at 533-34 (quoting Jeremy Bentham, 7 *Rationale of Judicial Evidence* 406 (Brownings ed. 1827)). Defendant's rationale-based argument fails to account for the indications that OEC 609 is the product of compromise between the legislature's concerns about admitting only the most probative prior convictions and the legislature's concerns about reducing time-consuming and collateral inquiries into the facts of individual convictions.

Defendant's rationale-based argument also fails to account for the legislature's adoption of an entirely

separate provision that could have alleviated the inevitable conflict in particular cases between easy-to-apply general standards and close alignment with the rule's theoretical underpinnings about relevance. As adopted by the legislature, OEC 609 provided that evidence of a felony conviction could be admitted against a criminal defendant only if "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant." OEC 609(1)(a) (1981). That requirement might have provided a solution to defendant's concern that his particular prior conviction should be treated as too old to be probative, despite a date of conviction that places it within the 15-year window of admissibility. But the voters eliminated that requirement in 1986, a change that this court has construed as preempting any balancing of the probative value of the conviction against "its prejudicial effect to the defendant." Or Laws 1987, ch 2, § 9 (Ballot Measure 10 (1986)); *State v. King*, 307 Or 332, 337, 768 P2d 391 (1989) (explaining significance of Measure 10 with respect to balancing under OEC 609).[11] Nevertheless, in attempting to understand whether the 1981 legislature would have intended defendant's proposed construction of OEC 609(3)(a) as a way to further its goal of "fairness and relevancy," it is significant that the legislature had included another path that furthered that goal. *See* Legislative Commentary to OEC 609, *reprinted in* Kirkpatrick, *Oregon Evidence* § 609.02 at 535-36, 539.

### III.   CONCLUSION

Ultimately, it was up to the legislature to decide whether to require trial courts to determine "the date of" an offered conviction by asking if the conviction reflects the retrial of an earlier, invalidated conviction for the same crime. Neither the text nor the legislative history persuades us that the legislature intended that approach. Although defendant may be correct that his approach would more closely align with the values underlying the rule, as we observed in rejecting a similar challenge to the predecessor

---

[11] A trial court still "may exclude evidence offered under OEC 609 if the probative value of that evidence 'is substantially outweighed by'" the OEC 403 consideration of "'needless presentation of cumulative evidence.'" *State v. Pratt*, 316 Or 561, 573, 853 P2d 827 (1993) (quoting OEC 403).

to OEC 609, "any change to be made in this rule must be made by the legislature, rather than by this court." *Marshall*, 268 Or at 51. We agree with the Court of Appeals that the legislature intended "the date of the conviction" in OEC 609(3)(a) to refer to the date of a valid conviction that a party proposes to offer as impeachment.[12] Here, the date of defendant's valid retrial conviction for second-degree assault was within the 15-year window of admissibility, and therefore the trial court did not err in admitting it to impeach his testimony.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[12] Defendant argues that if we accept the state's construction of the statute, then "every new judgment" may open a new impeachment window, even when a new judgment is entered without a full retrial and new adjudication of guilt. This case does not present, and therefore we do not decide, the question of whether a new judgment, without a new adjudication of guilt, could provide a new "later date" reopening a 15-year impeachment period under OEC 609(3)(a).